**COMMISSIONER OF INTERNAL REVENUE v. WALSH.**

**No. 10256.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 3, 1949.

Decided April 24, 1950.

Mr. S. Walter Shine, Special Assistant to the Attorney General, for petitioner. Assistant Attorney General Theron L. Caudle, and Messrs. Ellis N. Slack and Robert N. Anderson and Miss Louise Foster, Special Assistants to the Attorney General, were on the brief for petitioner. Mr. Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and Mr. Christopher A. Ray, Special Attorney, Bureau of Internal Revenue, Washington, D. C., also entered appearances for the petitioner.

Mr. Louis F. Oberdorfer, Washington, D. C., with whom Miss Carolyn E. Agger, Washington, D. C., was on the brief, for respondent.

Before EDGERTON, PRETTYMAN and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal by the Commissioner of Internal Revenue from a decision of the Tax Court of the United States, in which a deficiency in income and victory taxes proposed for the year 1943 and penalties proposed for the years 1942 and 1943 were not approved. Respondent is the divorced wife of Raoul Walsh. They were

married in 1916 and separated in 1926. On February 21, 1927, they entered into a written agreement providing for support and maintenance. On June 10, 1927, an interlocutory divorce decree was entered in California, and on August 1, 1928, a final divorce decree was entered. The agreement of 1927 was not mentioned in either decree, nor was there any provision made in either for alimony. In 1934 the agreement was modified so as to reduce the amount of payments. In 1941 the existing agreements were terminated and a new one executed. By the new agreement, the parties were to drop pending suits against one another, Mr. Walsh paid respondent a flat sum of $25,000, and regular payments substantially less than those in the 1927 and 1934 agreements were provided. Payments received by respondent amounted to $9,675 in 1942 and $13,950 in 1943.

Prior to the passage of the 1942 Revenue Act,[1] the divorced husband paid the tax on alimony. That act added to the Internal Revenue Code Section 22(k), 26 U.S. C.A. § 22(k), which provides in part: "In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments * · * * received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife * * *."[2]

The Tax Court held that in order for Section 22(k) of the Internal Revenue Code to apply the agreement under which the payments were made must be incident to the divorce decree. Prior decisions of that court are to the same effect.[3]

We agree with that interpretation for three reasons: (1) We think the wording of the statute leads to such a result; (2) decisions in other circuits make it inescapable; and (3) the Regulations of the agency support it. First, the statute purports to define situations in which the wife is taxable for alimony where formerly she was not. The opening sentence says: "In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance * * *." It then provides that payments received by the wife in discharge of a legal obligation incurred "under such decree or under a written instrument incident to such divorce or separation" shall be includible in her gross income. The terms "such decree", "such divorce" and "such * * * separation" seem to relate to the "decree of divorce or of separate maintenance" in the opening part of the sentence. Second, it is not disputed that there must be a decree of divorce or a decree of separation before this section of the statute has any application.[4] It is also settled that "divorce" as used in the phrase "incident to such divorce or separation" means more than mere status.[5] As was held in the Cox case,[6] it refers to the actual dissolution of the marriage ties. Since such dissolution can be accomplished only under a decree, if Section 22(k) is to apply, "divorce" or "separation" as used in the phrase "incident to such divorce or separation" must mean decree of divorce or decree of separation. Third, language used in the Regulations promulgated by the Bureau of Internal Revenue indicates that the agency itself agreed with the Tax Court's interpretation.[7]

1. 56 Stat. 798.

2. 56 Stat. 817, 26 U.S.C.A. § 22 (k).

3. Benjamin B. Cox, 1948, 10 T.C. 955; Frederick S. Dauwalter, 1947, 9 T.C. 580; Charles L. Brown, 1946, 7 T.C. 715.

4. Smith v. Commissioner of Internal Revenue, 2 Cir., 1948, 168 F.2d 446.

5. Cox v. Commissioner of Internal Revenue, 3 Cir., 1949, 176 F.2d 226; Smith v. Commissioner of Internal Revenue, supra, note 4.

6. Supra, note 5.

7. Reg. 111, § 29.22 (k)-1: "* * * In this case, the full amount of that part of the annuity received by the wife in discharge of the husband's obligation under the decree, or instrument incident thereto, is taxable to her under section 22 (k) * * *."

■ Furthermore, we see nothing in the legislative history to indicate a contrary intention on the part of Congress.[8] So long as there is an obligation of the husband to support the wife, payments made to her are alimony.[9] The payments here are alimony. All such payments are incidental to a status of divorce or separation. So, if the expression "incident to such divorce or separation" be construed to refer to any mere *status* of divorce or separation, the section would cover all payments made by a husband separated from his wife. But Congress did not purport to shift to the wife the tax burden of all alimony; had it meant Section 22(k) to provide that result, it would have been a simple matter to have said so. We see no reason to disturb the interpretation of the Tax Court.

■ The next query is whether the 1941 agreement was incident to the divorce decree. The Tax Court held that it was not. Prior decisions on this general subject are not clear as to the rule to be applied in determining whether a given agreement was or was not "incident to" a decree.[10] But we need not venture into that difficulty in this case. The agreement before us was made fourteen years after the divorce decree; the predecessor agreement was not mentioned in the decree; and, moreover, even that predecessor was specifically, in words, terminated by the new agreement. California law, under which the decree in this case was entered, provides that if the decree of divorce merely refers to an agreement, or approves it, but does not make the agreement a part of the decree, the agreement cannot be enforced under the decree.[11] Therefore, under California law, none of the various agreements in the case at bar was enforceable under the divorce decree. Under this combination of circumstances, no matter what the precise rule might be for decision in borderline cases, it seems to us that this agreement cannot be held to have been incident to the divorce decree.

The decision of the Tax Court is

Affirmed.

EDGERTON, Circuit Judge (dissenting).

The present agreement between the parties to the former marriage replaced, ultimately, an agreement they made after they separated and before they were divorced. I think the present agreement, like its predecessors, is incidental to the separation and divorce. If so it is "incident to such divorce or separation." I think the court errs in holding that the words of the statute, "under such decree or under a written *instrument incident to such divorce or separation*" [italics added], mean no more than quite different words, "under such decree or under a written *instrument incident to such decree*," would have meant. The latter words, which Congress chose not to use, would have expressed the meaning this court attributes to the former words, which Congress did use. Congress chose to cover not only payments provided for in a decree, or enforceable under a decree, but also other payments "in discharge of * * * a legal obligation * * * incurred * * * under a written instrument incident to such divorce or separation."

As to the word *alimony*, I think it narrower, not broader, than the words Congress used. *Alimony* would not clearly, if at all, cover payments made under the present agreement, for that word connotes payments provided for in a decree or enforceable under a decree. The phrase "incident to such divorce or separation" has no such limited connotation.

8. 1942-2 Cum.Bull. 372, 409, 427, 504, 568.

9. See Buchanan v. United States, 1947, 82 U.S.App.D.C. 374, 164 F.2d 710.

10. Frederick S. Dauwalter, 1947, 9 T.C. 580; Commissioner of Internal Revenue v. Murray, 2 Cir., 1949, 174 F.2d 816;

Robert Wood Johnson, 1948, 10 T.C. 647; Benjamin B. Cox, 1948, 10 T.C. 955.

11. Howarth v. Howarth, 1947, 81 Cal.App. 2d 266, 183 P.2d 670; Baxter v. Baxter, 1935, 3 Cal.App.2d 676, 40 P.2d 536; Schnerr v. Schnerr, 1932, 128 Cal.App. 363, 17 P.2d 749.