CECIL A. MILLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23268, 24478. Promulgated May 14, 1951.

*George Bouchard, Esq.*, for the petitioner.
*William B. Flynn, Jr., Esq.*, for the respondent.

1012

**OPINION.**

MURDOCK, *Judge:* The settlement agreement in the present case was entered into in 1937. Section 22 (k) became a part of the Internal Revenue Code in 1942. Thus, the petitioner and her husband did not have the new provisions of the law in mind at the time they entered into their agreement. It is not claimed that the decree of divorce imposed any obligation on Miller to make periodic payments to the petitioner. Section 22 (k) provides that periodic payments received by a divorced wife, subsequent to the decree of divorce in discharge of a legal obligation which, because of the marital or family relationship is imposed upon or incurred by a husband under a written instrument incident to the divorce, shall be includible in the gross income of the wife. The only difference between the parties is whether the written instrument under which the periodic payments were paid was "incident to" the divorce later obtained by the petitioner.

Not every agreement which is followed by a divorce is "incident to" the divorce within the meaning and intent of section 22 (k). It is

now pretty well recognized as a result of numerous decisions that a written instrument to be "incident to" a divorce must be part of an integral plan of the two spouses which includes the obtaining of a divorce, the agreement under which the periodic payments are made, as one court has expressed it, must be a "part of the package of divorce." *Cox* v. *Commissioner*, 176 F. 2d 226, affirming 10 T. C. 955. The chief difficulty has been to determine from the facts in each individual case whether the necessary connection between the two exists. That connection is rather obvious where a divorce action had been commenced and the parties thought it was still pending at the time they signed the agreement. *George T. Brady*, 10 T. C. 1192. Sometimes for other reasons it may appear that the spouses entered into their agreement with a mutual understanding that it was to be followed promptly by a suit for divorce as a part of their entire plan. All of the surrounding circumstances convinced the court in the case of *Estate of Daniel G. Reed*, 15 T. C. 573, that both parties in making the property settlement were doing so with an implied understanding that it would be followed by a divorce and that it was not something which they would have done had they not intended a divorce to follow. The fact that the two steps are a part of a single plan is clear where there is an express agreement or promise that one spouse is to sue for a divorce promptly following the agreement calling for the periodic payments. *Robert Wood Johnson*, 10 T. C. 647; *Bertram G. Zilmer*, 16 T. C. 365. However, an agreement providing for periodic payments can not be said to be incident to a divorce later obtained where it was separate from the divorce and was arrived at for its own benefits even though shortly thereafter one spouse sued for divorce. *Joseph J. Lerner*, 15 T. C. 379. The fact that one spouse may be considering the possibility of a divorce is not enough to make the agreement "incident to" a divorce later obtained.

The present case is similar in a number of respects to the *Lerner* case. The petitioner and her husband had never discussed divorce and she had no intention of obtaining a divorce at the time they started, through their attorneys, to negotiate the property settlement. Furthermore, before the petitioner changed her mind and disclosed that fact to her attorney, the attorneys, with the approval of their clients, had agreed upon those terms of the property settlement under which the periodic payments here in question were made. If that situation had continued until they had signed the property agreement, this case would be indistinguishable from the *Lerner* case.

The difference is that while they were trying to divide up a lot of relatively small personal articles and before they signed the agreement, the petitioner told her attorney that she had changed her mind and wanted to obtain a divorce. She did not intend that information

to be used in connection with the property settlement. Her attorney told Miller's attorney of her mental attitude and Miller learned of it. But it was merely information and not a promise or condition connected with the property settlement. However, Miller appeared as a witness for the Commissioner and testified that he had heard that Mrs. Miller was thinking of getting a divorce and he told his counsel to advise counsel for the petitioner that under no circumstances would he sign any agreement for her support unless it was understood that she would obtain a divorce. He testified, further, that he would not have come to California and signed the agreement without a verbal understanding with the attorney for the petitioner that she was going to obtain a divorce. Miller's attorney testified, as a witness for the Commissioner, that the property settlement was predicated upon the understanding that the petitioner would file a divorce suit. Neither Miller nor his attorney ever talked to the petitioner about a divorce and there is no reason to disbelieve her testimony to the effect that she never promised or agreed to obtain a divorce as a condition to the property settlement. Miller and his attorney did not deny that they had agreed upon all provisions of the property settlement, except the items on schedules A and B, months before the subject of divorce was ever mentioned. The attorney who represented the petitioner in the property settlement and later in the divorce never dealt directly with Miller in regard to the property settlement agreement. He denied that he had given any assurance to Miller's attorney prior to the signing of the property settlement agreement that the petitioner would obtain a divorce. He said he had never been asked to give any such assurance and had never had any discussion with Miller's attorney indicating that the property settlement was in any way connected with the divorce. He testified without equivocation that the property settlement agreement was entered into without any understanding or obligation that the petitioner would proceed with a divorce action. The Court feels that Miller and his attorney are mistaken and have testified more strongly for the Commissioner than the actual situation up to June 15, 1937, justifies.

Although the petitioner had told her attorney that she had decided to obtain a divorce, and although Miller knew that, nevertheless, she was free to make a new decision that she would not obtain a divorce. The property settlement was still separate in the mind of the petitioner from any action which she might subsequently take in regard to any divorce. She had sought the property settlement for its own benefits when she had no thought of divorce. She sought it because she wanted a settlement of her property rights and funds on which to live. Miller was aware of that but, at the time he signed the agreement, was hoping that his wife would seek and obtain a divorce, yet he had merely his

hope to rely upon. It had not been a foregone conclusion from the beginning that the wife would obtain a divorce, as was true in some of the cases cited above, and there was no mutual understanding between them on which he could rely or from which the petitioner might feel any obligation, moral or otherwise, impelling her to seek a divorce. In short, the property agreement in this case was not a part of an integral plan, which plan included an honest attempt on the part of the petitioner to obtain a divorce. It was not a part of the package of the divorce which was later obtained.

*Decisions will be entered for the petitioner.*