ROWENA S. BARNUM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36224. Promulgated December 10, 1952.

*William E. Mills, Jr., Esq.*, for the petitioner.
*Francis J. Butler, Esq.*, for the respondent.

402

406

OPINION.

BLACK, *Judge:* Two issues are presented here for our decision.

The first issue involves section 22 (k) of the Code,[1] and specifically whether the written agreement pursuant to which petitioner received alimony was "incident to" the divorce acquired by petitioner 19 years prior to the agreement. The question is a two-fold one. First, just what is the proper construction to be applied to the statutory term "written instrument incident to such divorce," and second, how is this term to be applied to the fact situation presented. During the past 5 years the phrase, "incident to" has frequently received our attention, as well as that of other courts.[2]

---

[1] SEC. 22. GROSS INCOME.

\*     \*     \*     \*     \*     \*     \*

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, *periodic payments* (whether or not made at regular intervals) received subsequent to such decree *in discharge of*, or attributable to property transferred (in trust or otherwise) in discharge of, *a legal obligation which*, because of the marital or family relationship, *is imposed* upon or incurred by such husband under such decree or *under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife*, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband.   \*   \*   \*   [Italics added.]

[2] *Florence B. Moses*, 18 T. C. 1020 ; *Jane C. Grant*, 18 T. C.1013 ; *Lily R. Reighley*, 17 T. C. 344, 351 ; *Elizabeth E. Guggenheim*, 16 T. C. 1561 ; *George J. Feinberg*, 16 T. C. 1485, revd. (C. A. 3, Aug. 13, 1952) 198 F. 2d 260 ; *Cecil A. Miller*, 16 T. C. 1010, revd. (C. A. 9, Oct. 28, 1952) 199 F. 2d 597 ; *Dorothy Briggs Smith*, 16 T. C. 639, affd. (C. A. 1, 1951) 192 F. 2d 841 ; *Bertram G. Zilmer*, 16 T. C. 365 ; *Joseph J. Lerner*, 15 T. C. 379, revd. (C. A. 2, March 17, 1952) 195 F. 2d 296 ; *Jessie L. Fry*, 13 T. C. 658 ; *Muriel Dodge Neeman*, 13 T. C. 397 ; *Commissioner* v. *Murray* (C. A. 2, 1949), 174 F. 2d 816 ; *Miriam Cooper Walsh*, 11 T. C. 1093, affd. 183 F. 2d 803 ; *George T. Brady*, 10 T. C. 1192 ; *Benjamin B. Cox*, 10 T. C. 955, affd. 176 F. 2d 226 ; *Robert Wood Johnson*, 10 T. C. 647.

In their respective briefs petitioner relies in particular upon *Commissioner* v. *Walsh*, 183 F. 2d 803, and respondent in particular relies upon *Smith* v. *Commissioner*, 192 F. 2d 841.

In our Findings of Fact we have described the four separation agreements entered into by petitioner and her former husband Walter Barnum. We need not discuss here the provisions contained in each agreement; however, it is appropriate to consider how each agreement appears to fit into the circumstances and how they may be related to the decree of divorce. The decree of divorce according to the translation in evidence contained no reference to any separation agreement, notwithstanding the written agreement may be "incident to" the "divorce or separation," *Jane C. Grant*, 18 T. C. 1013.

Petitioner and Walter Barnum were divorced in 1922; the "written agreement" here in question was dated May 29, 1941, or 19 years subsequent to the divorce. Were these the only facts, the written agreement would hardly seem "incident to the divorce or separation." However, we have other facts before us. There was the second agreement entered into by the parties on October 20, 1921, which recites that an action of divorce was pending and also that the payments provided for were to be made only in the event of divorce. The second agreement in English provided for alimony in terms of dollars, the decree in French provided for alimony in terms of francs. Except for the amounts of alimony payments, the terms of the divorce decree were to the same effect as the second agreement.

Because of the inconsistency, the parties entered into another agreement, their third, on January 27, 1922. This was 2 weeks after the decree became final and 4 months subsequent to the second agreement. The third agreement in English clarified the question of what amount of alimony was to be paid monthly and in what currency, and it was provided therein that the agreement was "in substantiation and in confirmation" of the decree and was for the purpose of rendering "more effective the provisions thereof on the subject of alimony." The third agreement was, we think, under these facts "incident to" the divorce of petitioner and Walter Barnum. During the period from 1922 through 1935, Barnum performed his obligations under the third agreement. Thereafter, he failed to make the full payments required by this agreement and in 1940, petitioner brought an action in the Supreme Court of New York to recover the arrearages. She obtained summary judgment in the amount of $3,100 plus interest.

While the husband's appeal was pending, the parties executed the agreement here under dispute. This agreement provided for the payment in installments of the sum of $3,000 (approximately the amount of the judgment) and for a monthly payment of $150. This

fourth agreement under which the payments in question were made is an agreement in lieu of the third one which, as we have explained, was "incident to" the divorce. Accordingly, we believe the fourth agreement should be held to be "incident to" the divorce. Moreover, this fourth agreement constituted a compromise of a dispute over obligations arising from a divorce decree.

Based upon the facts presented here and considering the recent opinions of this and the courts of appeal, we conclude that the agreement here under dispute is "incident to" petitioner's Paris divorce Accordingly, the payments received by petitioner during 1942 and 1943 under this agreement constitute alimony income taxable to petitioner as provided by section 22 (k) of the Code.

The second issue presented in this proceeding is whether petitioner is entitled under section 23 (e) to a deduction based upon her stock in a cooperative apartment corporation becoming worthless during the taxable year. Petitioner in 1929 paid $13,000 for her stock which consisted of 130 shares in a cooperative apartment corporation and during 1944 or prior thereto the stock became worthless. There seems to be no doubt about these facts and we are inclined to agree with petitioner's contention that her shares of corporate stock became worthless during the year 1943. However, we do not have to decide in which year the loss occurred for it is our conclusion that the loss was not of the type contemplated by section 23 (e) of the Code.[3]

That the petitioner acquired shares of stock in the cooperative apartment development was incidental, a formality. Essentially, the transaction in 1929 was one of acquiring by petitioner a personal residence for herself. It is this primary purpose of petitioner that we are concerned with in determining her income tax liability. Initially, this transaction of petitioner was one involving a personal residence and not a transaction entered into for profit. Subsequently, during part of each of the years 1937, 1938, and 1939 petitioner rented her apartment, including her furniture. Such rentals, however, did not convert residential property into property being held for rental purposes but were merely incidental to the primary purpose of having a personal residence and keeping the expenses at a minimum.

In *E. F. Fenimore Johnson*, 19 T. C. 93, we held, among other things, that:

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

    \*        \*        \*        \*        \*        \*

   (e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

      (1) if incurred in trade or business; or

      (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

    \*        \*        \*        \*        \*        \*        \*

The receipt of a small amount of rental income from certain portions of the residential property prior to sale was insufficient to constitute a transaction appropriating the premises to property used in a trade or business or to constitute a transaction entered into for profit within the purview of section 23 (e) of the Internal Revenue Code. * * *

Likewise, the incidental and occasional renting of her apartment during prior years does not constitute an appropriation or conversion by petitioner of her residence into property used in a trade or business or into a transaction entered into for profit within the purview of section 23 (e) (1) or (2) of the Code. We think that the entire transaction is essentially one involving the personal residence of petitioner and the loss incurred in connection therewith is not deductible under section 23 (e) of the Code.

*Decision will be entered for the respondent.*