ANTOINETTE L. HOLAHAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JAMES T. HOLAHAN AND ESTHER P. HOLAHAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31864, 36399. Promulgated January 12, 1954.

---

*Sidney R. Rubin, Esq.*, and *D. A. Forsyth, Esq.*, for the petitioners.
*Thomas R. Charshee, Esq.*, for the respondent.

OPINION.

BRUCE, *Judge:* The principal issue to be determined in these proceedings is whether certain payments totaling $32,025 made by James T. Holahan, the petitioner in Docket No. 36399, to his former wife, Antoinette L. Holahan, the petitioner in Docket No. 31864, in 1949 are includible in her income under section 22 (k) of the Internal Revenue Code [2] and are deductible by him under section 23 (u).[3] By amended pleadings filed in Docket No. 31864, re-

[2] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation, shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. In case any such periodic payment is less than the amount specified in the decree or written instrument, for the purpose of applying the preceding sentence, such payment, to the extent of such sum payable for such support, shall be considered a payment for such support. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument, but only to the extent that such installment payment for the taxable year of the wife (or if more than one such installment payment for such taxable year is received during such taxable year, the aggregate of such installment payments) does not exceed 10 per centum of such principal sum. For the purposes of the preceding sentence, the portion of a payment of the principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be considered an installment payment for the taxable year in which it is received. (In cases where such periodic payments are attributable to property of an estate or property held in trust, see section 171 (b).

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k)' in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

spondent has also alleged, as an alternative issue, that the net amount of $28,125 received by Antoinette in 1949 was taxable income to her under section 22 (a), as damages received for breach of contract. Insofar as sections 22 (k) and 23 (u) are concerned the respondent has taken diametrically opposite positions in his determinations of the deficiencies involved in these proceedings. On brief, he concedes that one or the other of these determinations in this regard is wrong, but strongly urges that the determination with respect to Antoinette is the correct one.

Determination of the principal issue depends in turn upon the question whether the net aggregate sum of $28,125 and the $75 weekly payments (totaling $3,900) constitute periodic payments in discharge of a legal obligation which, because of the marital relationship, was incurred by James under a written instrument incident to a divorce.

The payments involved were made immediately pursuant to the agreement entered into between Antoinette and James on January 12, 1949. Antoinette contends that this agreement, made some 20 years after the decree of divorce was entered, was a new agreement, complete unto itself, superseded all previous agreements, and was not "incident to" such divorce. We do not agree.

The situation herein is substantially similar to that which existed in the case of *Dorothy Briggs Smith*, 16 T. C. 639. In that case, after suit for divorce had been instituted the parties entered into an agreement including monthly payments for the support of the wife and children. This agreement was made a part of the final decree of divorce. Subsequently the husband filed a motion for reduction of the payments and, before decision thereon, the parties entered into another agreement providing for yearly payments to the wife, less than had been provided by the earlier agreement, in lieu of all marital obligations of the husband and including all obligations to make payments required under the earlier agreement. In holding the later agreement incident to the divorce we there said:

The payment in question was made under the provisions of the 1944 agreement. But that agreement cannot be considered *in vacuo*. The circumstances surrounding its execution must be examined, and the reasons for its adoption scrutinized. From such a study we have concluded that the 1944 agreement was a revision of the 1937 agreement, which admittedly was incident to the divorce, and thus it was incident to the final decree.

See also *Rowena S. Barnum*, 19 T. C. 401.

Our study of the circumstances surrounding the execution of the 1949 agreement herein leads us to a similar conclusion. Antoinette and James had entered into a separation agreement in 1924 providing for her support and maintenance and that of their children. Divorce was not discussed or contemplated at that time and this agreement was not incident to divorce. In 1928 Antoinette instituted an action

for divorce and while pending, on April 7, 1928, the parties entered into an agreement containing provisions for the support and maintenance of Antoinette and the children similar in amounts to those provided by the 1924 agreement except that certain conditional payments were made absolute. Both parties agreed they would not thereafter apply for any modification of the allowances therein provided. Included in this agreement was also a provision whereby James consented that, in the event a divorce was granted to Mrs. Holahan in the pending action, a provision might be inserted therein allowing her alimony, the rate specified being the same as theretofore set out in the agreement, and further providing that such provision in the decree "shall in no way effect [sic] the obligations imposed by the terms of this agreement," except that payment of the specified amount annually should be in full satisfaction of both the agreement and the decree.

The Supreme Court for Monroe County, New York, took note of the agreement of April 7, 1928, in its findings on which the divorce decree was based. The divorce decree itself, entered May 29, 1928, did not specifically mention the agreement of April 7, 1928, but in its preliminary recitals referred to the court's findings previously made which had referred to the agreement, and, it incorporated therein a provision for payment for the support of the divorced wife and children in amounts exactly as provided in the agreement. In view of these facts it is not necessary that we attempt any final definition of "incident to," a phrase which courts have found difficulty in clarifying. *Izrastzoff* v. *Commissioner*, 193 F. 2d 625, 628, affirming 15 T. C. 573. The evidence clearly establishes that the agreement of April 7, 1928, was "incident to" the divorce. Cf. *F. Ewing Glasgow*, 21 T. C. No. 25 (Nov. 18, 1953); *Rowena S. Barnum, supra; Jane C. Grant*, 18 T. C. 1013 (on appeal C. A. 2); *Jesse L. Fry*, 13 T. C. 658; *Robert Wood Johnson*, 10 T. C. 647; *George T. Brady*, 10 T. C. 1192.

Petitioner Antoinette's argument that the 1928 agreement was not incident to the divorce because it merely modified the 1924 agreement which was not incident to the divorce decree is without merit. In *Muriel Dodge Neeman*, 13 T. C. 397, affd. 200 F. 2d 560, certiorari denied 345 U. S. 956, we held that where, incident to a divorce, parties amend an old agreement, not incident to divorce, the whole agreement, as amended, is incident to a divorce within section 22 (k) of the Internal Revenue Code.

Subsequent to the execution of the agreement of April 7, 1928, and the entry of the decree of May 19, 1928, James procured a modification of said decree on August 29, 1933, reducing the amount of payments for the support of Antoinette and the children from $8,000 per year as provided in the original decree to $50 a week and paid the $50

weekly from the effective date of said modification to the end of 1948. On May 20, 1947, Antoinette filed an action against James to recover the difference between the $50 weekly so paid and the amount provided for under the April 7, 1928, agreement. Judgment in her favor in the total sum of $124,784 was entered December 17, 1947. Various efforts were made by James to have this judgment set aside and canceled, including a motion for leave to file an amended answer setting up a discharge in bankruptcy, obtained by him in 1937, as a defense to any obligations under the 1928 agreement, which motion was denied by the Supreme Court for Monroe County, New York, and appeals to the Appellate Division of the Supreme Court and the Court of Appeals of the State of New York, both of which affirmed the action of the Supreme Court for Monroe County. He also instituted an action in the District Court of the United States for the Western District of New York to enjoin enforcement of the judgment on the basis of the aforesaid discharge in bankruptcy. Said district court dismissed the complaint on motion of Antoinette and James appealed therefrom to the United States Court of Appeals for the Second Circuit. Pending such appeal and also pending disposition of a motion by Antoinette to have the Supreme Court for Monroe County remodify its decree so as to increase the amount payable under the divorce decree, Antoinette and James entered into the agreement of January 12, 1949, for the purpose of "settling all their differences and of ending all future litigation" therein mentioned.

We think it clear from all the facts that the agreement of January 12, 1949, resulting from differences between the parties which arose in connection with the divorce decree and an earlier agreement which was incident to the divorce, was also incident to the divorce. *Rowena S. Barnum, supra, Dorothy Briggs Smith, supra*. The authorities relied upon by petitioner Antoinette are all distinguishable on their facts. In *Frederick S. Dauwalter*, 9 T. C. 580, no provision for alimony having been made in the original divorce decree, the court which granted the divorce was without power under the state statutes subsequently to provide for alimony, and, the later agreement was a *voluntary* promise by the husband. In *Commissioner* v. *Murray*, 174 F. 2d 816, affirming in part and reversing in part a Memorandum Opinion of this Court dated June 14, 1948, the later agreement was also an entirely *voluntary* promise by the husband. In *Miriam C. Walsh*, 11 T. C. 1093, affd. 183 F. 2d 803, neither the original nor any later agreement was mentioned in the divorce decree. The decision therein turned upon the question whether the written agreement in question must be "incident to" the divorce decree itself or the status of divorce, a question which we have found it unnecessary to discuss in this case in view of the clear showing that the agreement of April

7, 1928, was incident to the divorce decree. And in *Benjamin B. Cox*, 10 T. C. 955, affd. 176 F. 2d 226, there was never a legal obligation for support imposed by or incurred under a divorce decree, and there was no written instrument imposing such an obligation prior to the divorce. That case also involved an obligation *voluntarily* assumed after it had been fully cut off. The instant proceeding is concerned with an agreement which modifies a continuing obligation imposed by a decree of divorce as well as being pursuant to a written instrument incident to such divorce.

Having found that the agreements of April 7, 1928, and January 12, 1949, were both incident to the divorce, the question remains whether the payments received in 1949 constituted "periodic payments" within the meaning of section 22 (k) of the Internal Revenue Code.

Section 22 (k) requires a divorced wife to include in her gross income "periodic payments (whether or not made at regular intervals) received subsequent to such decree \* \* \*." Excepted from this requirement are installment payments of an obligation the principal sum of which is specified in the decree or instrument unless such principal sum is payable within a period of not more than 10 years.

The $75 weekly payments, totaling $3,900, received by Antoinette in 1949 clearly constituted periodic payments within the meaning of the statute and having found that the agreement under which they were paid was incident to the decree, they are includible in the gross income of Antoinette and deductible by James in the taxable year 1949.

With respect to the $28,125 received by Antoinette from James during the year 1949, this represented a partial payment of a $100,000 sum which James agreed to pay under the agreement of January 12, 1949. This $100,000 sum was arrived at between the parties in settlement of the $124,784, which the state court had found James owed Antoinette in arrearages and interest thereon under the April 7, 1928, agreement.

In *Estate of Sarah L. Narischkine*, 14 T. C. 1128, affd. (C. A. 2) 189 F. 2d 257, we held that arrearages retain their *original* character, stating:

Since the arrears here would have constituted periodic payments had they been paid when due, the receipt of such arrears, even though in a lump or aggregate sum, must be regarded as the receipt of a periodic payment.

See also *Jane C. Grant, supra* (on appeal C. A. 2), and *Elsie B. Gale*, 13 T. C. 661, affd. (C. A. 2) 191 F. 2d 79. The fact that the sum here involved is less than the total sum of the arrearages does not deprive it of this character. Accordingly, under the rationale of the *Narischkine, Grant*, and *Gale* cases, *supra*, we think it is clear that the $28,125 paid by James to Antoinette in 1949 was a "periodic payment" within the meaning of section 22 (k).

Petitioner Antoinette further contends however, in the alternative, that she is not taxable on support payments which were owing to her prior to 1942 when section 22 (k) became applicable,[4] since she would not have been taxable on such payments had they been made when due.

It is to be noted, however, that Antoinette was on the cash accounting basis. Moreover, section 22 (k) provides that "periodic payments * * * *received* subsequent to such decree * * * shall be includible in the gross income of such wife, * * *." (Emphasis supplied.) See also section 29.22 (k)–1 of Regulations 111 which, with certain exceptions not here material, provides:

Periodic payments are includible in the wife's income under section 22 (k) only for the taxable year in which received by her. As to such amounts, the wife is to be treated as if she makes her income tax returns on the cash receipts and disbursements basis, regardless of whether she normally makes such returns on the accrual basis. * * *

In *Lily R. Reighley*, 17 T. C. 344, 356, in discussing the statutory plan of taxing "alimony" payments embraced by sections 22 (k) and 23 (u), it was pointed out that:

Under the statutory provision the *year* of the wife in which the periodic payments must be included and the *year* of the husband in which he may take deductions for the payments is *the year of the actual payment*, even though either or both the wife and the husband report income on an accrual basis. * * *

The legislative history of the statute supports this interpretation:

Section 23 (u), as well as section 22 (k), contemplates the treatment of alimony payments as if the husband and wife were on a cash receipts and disbursement basis, that is, the deduction is allowed the husband only for actual payment within his taxable year and the wife includes in her income for a taxable year under section 22 (k), only such periodic payments described therein as are actually received during such taxable year (including of course, the constructive receipt or payment of amounts unqualifiedly subject to the demand of the wife or husband, as the case may be). * * * S. Rept. No. 1631, 77th Cong., 2d Sess. (1942–2 C. B. 504, 569).

In *Jane C. Grant, Elsie B. Gale*, and *Estate of Sarah N. Narischkine*, all *supra*, the sums involved included arrearages covering periods both prior and subsequent to 1942. While the opinions in each of these cases did not discuss the precise contention presented herein, the facts so clearly encompassed the question it is to be presumed it was taken into consideration. We there held that the alimony payments

---

[4] Section 120 (g), Revenue Act of 1942, provides: .

SEC. 120. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(g) TAXABLE YEARS TO WHICH AMENDMENTS APPLICABLE.—The amendments made by this section shall be applicable only with respect to taxable years beginning after December 31, 1941; except that if the first taxable year beginning after December 31, 1941, of the husband does not begin on the same day as the first taxable year beginning after December 31, 1941, of the wife, such amendments shall first become applicable in the case of the husband on the first day of the wife's first taxable year beginning after December 31, 1941, regardless of the taxable year of the husband in which such day fails.

for prior years were periodic payments, even though the entire amounts were paid in the taxable year, and that they constituted taxable income to the wives in the year received under the provisions of section 22 (k) of the Internal Revenue Code. Our attention has not been called to any authority holding to the contrary.

Accordingly, we hold that the sum involved herein is to be included in Antoinette's gross income in 1949, the year in which she actually received it.

On brief, Antoinette also challenges the constitutionality of section 22 (k) of the Internal Revenue Code. Since, however, it was not specifically pleaded, the question of the constitutionality of the statute will not be considered by this Court. *Muriel Dodge Neeman, supra.*

One other contention of petitioner Antoinette is to be noted. She contends that a portion of the sum in issue must be excluded from her income on the ground that it represents consideration for her surrender of future support rights under the 1928 agreement. The terms of the 1949 agreement do not bear this out. According to its recitals it was in settlement of all differences between the parties stemming from the divorce and the arrearages under the 1928 agreement. There is accordingly no basis for this contention.

We conclude that respondent did not err in his determination respecting the taxability of the income received by petitioner Antoinette L. Holahan during the year 1949, but that he did err with respect to the deduction of said sums by petitioners James T. and Esther P. Holahan.

Petitioner Antoinette also alleged respondent erred in failing to give her credit for $5,867.42 alleged to have been paid by her on her declaration of estimated tax for the taxable year. The parties stipulated for allowance of such payments under Rule 50. It is also to be noted there is a discrepancy between the amount stipulated as received by Antoinette in 1949, to wit $32,025, and the amount of $33,850 claimed by James as a deduction for alimony paid to her in that year. There is no explanation in the record of this discrepancy. The amount stipulated should therefore be used in a computation under Rule 50.

*Decisions will be entered under Rule 50.*