WILKINS, Circuit Judge,
concurring in part and dissenting in part:
The majority affirms the determination of the Tax Court that the 1992 property transfer from John Young to his former wife Louise was “incident to” the Young’s divorce and that Louise must include as her income the contingent fees paid directly to her attorneys from the sale of the land transferred. I concur regarding the contingency fee issue but respectfully dissent regarding whether the 1992 property transfer was incident to the Young’s divorce. I would conclude that a property transfer made between former spouses to satisfy a judgment is not made “incident to” the parties’ divorce merely because the lawsuit that produced the judgment was for default on a promissory note obtained in the parties’ divorce property settlement.
I.
The issue in dispute here is which former spouse is responsible for paying capital gains taxes as a result of the sub *380 stantial appreciation of the transferred property that occurred prior to the time John used the- property to satisfy his debt to Louise.[1] The answer to that question depends on whether the 1992 transfer was a taxable event. If it was, then John owed .capital gains taxes and Louise received a basis that reflected the fact that the property had appreciated substantially prior to her receiving it. If it was not, then John owed no capital gains taxes and Louise took the property at John’s previous, much lower basis. I believe the applicable law demonstrates that the 1992 transfer was a taxable event and therefore capital gains taxes were due and payable by John as a result of this transaction.
The parties agree that the 1992 property transfer was a taxable event unless 26-U.S.C.A. § 1041 applies. That section provides that “[n]o gain or loss shall be recognized on a transfer of property ... to ... a former spouse ... if the transfer is incident to the divorce.” 26 U.S.C.A. § 1041(a)(2) (West Supp.2000). A transfer is “incident to the divorce” if it either “occurs within 1 year after the date on which the marriage ceases” or “is related to the cessation of the marriage.” Id. § 1041(c). A temporary Treasury regulation interpreting § 1041 in turn provides, in pertinent part, that a transfer is deemed “related to the cessation of the marriage” when made within six years of the divorce and “pursuant to a divorce or separation agreement.” Temp. Treas. Reg. § 1.1041-lT(b) (2000). On the other hand, “[a]ny transfer not pursuant to a divorce or separation instrument ... is presumed to be not related to the cessation of the marriage.” Id. The regulation further states that “[t]his presumption may be rebutted only by showing that the transfer was made to effect the division of property owned by the former spouses at the time of the cessation of the marriage.” Id.
The majority does not address the question of whether the 1992 agreement to satisfy the judgment was a “divorce or separation instrument,” but concludes that the Government met its burden of proving that the property transfer “was made to effect the division of [marital] property.” I will briefly explain why I believe the property transfer was not a “divorce or separation instrument” and then explain why I believe it is incorrect to conclude that the property transfer “was made to effect the division of [marital] property.”
A.
The term “divorce or separation instrument” appears in 26 U.S.C.A. § 71, which pertains to alimony and separate maintenance payments. That section defines “divorce or separation instrument,” as pertinent here, as “a decree of divorce or separate maintenance or a written instrument incident to such a decree.” 26 U.S.C.A. § 71(b)(2)(A) (West 1988). It is undisputed that the settlement agreement is not a decree of divorce or separate maintenance. Accordingly, it qualifies as a “divorce or separation instrument” only if it is “a written instrument incident to” “a decree of divorce or separate maintenance.”
Words not defined in a statute are given their ordinary meaning. See Scrimgeour v. Internal Revenue, 149 F.3d 318, 327 (4th Cir.1998). “Incident” means “dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance.” Black’s Law Dictionary 762 (6th ed.1990). Here, the 1992 agreement did not bear such a close relationship to the divorce decree. Instead, the 1988 divorce decree and the 1992 *381 agreement were connected only indirectly: The 1992 agreement settled a dispute that arose out of the 1989 division of property that occurred as a result of the parties’ 1988 divorce. Nothing in the divorce decree or the property division compelled the land transfer contemplated in the 1992 agreement. Accordingly, the settlement document does not fit the definition of a “divorce or separation instrument.”
B.
The determination that the 1992 settlement agreement is not a “divorce or separation instrument,” as that term is defined in § 71, gives rise to a presumption that the property transfer was not related to the cessation of the marriage. In order to rebut that presumption, the Government was required to show “that the transfer was made to effect the division of [marital] property.” Temp. Treas. Reg. § 1.1041-lT(b). Because the division of marital property was completed years before the property transfer — when the parties released their marital claims against one another and Louise accepted the promissory note — I would hold that the Government failed to make the necessary showing.
A property transfer is not made for the purpose of effecting a marital property division when the marital property division has already been completed.[2] The Youngs completed this division when John delivered the promissory note to Louise. His payments on the note did not transfer marital property; the note itself accomplished that. Neither were the payments inherently marital, as alimony is. Instead, John’s obligations on the note were the obligations of a debtor to a creditor and were no more, intimate than a mortgage. Accordingly, although the judgment arising from John’s default on the note was causally related to the marital property division, that division had been completed and the marital economic ties between the Youngs had been severed before the 1992 transfer occurred.[3] The 1992 property transfer was made simply to satisfy a judgment between them, for reasons bearing no relationship to the fact that the parties were previously married. In other words, John owed a debt to Louise because of the marriage, but they did not agree to settle the debt by a land transfer because of the marriage.
Indeed, the fact that the parties’ status as former spouses did not affect their decision to make the transfer in question was also the basis for private letter ruling 9306015. See Priv. Ltr. Rul. 9306015,1992 WL 437824 (Feb. 12, 1993). There, the divorce decree contemplated a sale to a third party of the former marital house, in which each spouse owned an interest. Nevertheless, eight years after the parties’ divorce, the husband sold his interest in the home to his former wife. The IRS *382 ruled that because the sale was simply “an arm’s-length transaction between two parties that happen to be former spouses,” the transfer was not made to effect the division of marital property. Id. The majority attempts to distinguish this ruling by asserting that, unlike the parties in the private letter ruling, the Youngs were not simply “two parties that happen to be former spouses” because the circumstances that led John to make the 1992 transfer were created by the marital property division. See ante, at 374. Clearly, however, the IRS’ characterization of the parties in the private letter ruling as “happening] to be former spouses” did not refer to the history of the circumstances leading to the sale; indeed, the sale was the direct result of circumstances arising from the marriage. Rather, the characterization referred to the husband’s purpose in making the transfer. Regardless of whether the husband’s shared interest in the house arose from his prior marriage, that history did not affect his decision to sell his interest to his joint owner. The same principle applies here. Regardless of the fact that John’s status as a judgment debtor arose from his prior marriage, that history did not affect his decision to satisfy the judgment by making the 1992 transfer. Accordingly, as in the private letter ruling, the 1992 transfer was simply “an arm’s-length transaction between two parties that happen to be former spouses,” and it cannot be said that the 1992 transfer was “made to effect the division of [marital] property.”
The majority concludes that the 1992 property transfer should not be treated as a taxable event because that would have been the result had Louise agreed to the property transfer as part of the 1989 divorce settlement.[4] See id. at 375. Although like transactions should indeed receive like treatment under the tax code, the hypothetical transaction offered by the majority and the transaction that actually occurred are not alike. In fact, they differ in the most critical way: In the hypothetical, Louise would have obtained the property as a means of severing her economic union with her former spouse, thereby justifying treatment of the transfer as if it were made within a single economic unit, whereas in the actual transaction, the property was transferred after the Youngs’ economic union had already been completely severed. See H.R.Rep. No. 98-432, at 1491-92 (1984), reprinted in 1984 U.S.C.C.A.N. 697, 1134 (noting that the reason that transfers between spouses are not taxed is “that a husband and wife are a single economic unit”). Accordingly, the hypothetical transfer would have been “made to effect the division of [marital] property,” while the actual transaction was not. In contrast, John’s transfer of the property to Louise to satisfy a judgment should not be treated differently from a sale by John to Louise of the property. Each property transfer is simply an arm’s-length exchange of property for valuable consideration between people who happen to be former spouses, and no valid tax policy would justify treating these like transactions differently.[5]
If the words “made to effect the division of[marital] property” were interpreted in a vacuum, the majority’s interpretation might be plausible, but when one considers the anomolous results produced by the majority’s interpretation, its incorrectness becomes apparent. It is wrong to conclude that the Treasury Department intended to treat differently two arm’s-length property transfers between former spouses based on the fact that in one the *383 transferee pays cash for the property and in the other she allows the transfer to satisfy a judgment. It is therefore just as wrong to conclude that the Treasury Department intended that the line between transfers “made to effect the division of [marital] property” and transfers not made to effect such a division would be drawn where the majority draws it today.
One final aspect of this case deserves mention. From the majority’s decision to interpret the applicable regulation in a manner that is supported neither by the language of the regulation nor by any valid tax policy, one might infer that unmentioned equitable considerations weigh in favor of the majority’s result. Just the opposite is true, however. By holding that the 1992 transfer was a § 1041 transaction, the majority provides a substantial windfall of several hundred thousand dollars to a defaulting debtor while at the same time punishing a creditor who accepted a settlement instead of litigating her claims (which would have resulted in a satisfaction of the judgment without the tax burden she now faces).[6]
For all of these reasons, I believe that the 1992 transfer was not “incident to the divorce,” and thus the transfer of the property was a taxable event to John. I respectfully dissent from the majority’s conclusion to the contrary.

. John’s basis in the property was $130,794. He transferred the land to Louise to satisfy a debt totaling $2,153,845, including $1,500,000 in principal, $344,938 in interest, $300,606.08 in attorney’s fees, and $8,300 in collection costs. John reported no capital gain from his use of the appreciated property to satisfy his debt. Louise sold the property for $2,265,000 and reported a $100,000 short-term capital gain and $356,500 in interest income.

. The majority states that the statement made by the Tax Court that the 1992 transfer "completed the division of marital property” was a finding of fact that we must accept unless clearly erroneous. See ante at 374 n. 2. Clearly, however, the statement was a conclusion of law, not a finding of fact. The Tax Court specifically set out its "FINDINGS OF FACT” at the beginning of its opinion, Young v. Comm’r, 113 T.C. 152, 154-55, 1999 WL 632706 (1999); the statement cited by the majority appears in the section of the opinion labeled "OPINION.” Id. at 156. And, even without this delineation, it is apparent that the statement is no finding of fact. This case was decided on stipulated facts, and the determination that "[t]he 1992 Agreement resolved a dispute arising under the 1989 Property Settlement and completed the division of marital property” simply described how the 1992 agreement related to the property division. Id. There is no reason for us to give deference to this analysis by the Tax Court of stipulated facts. Because the statement is a conclusion of law, our standard of review is de novo. See Waterman v. Comm'r, 179 F.3d 123, 126 (4th Cir.1999).

. This factor distinguishes Barnum v. Commissioner, 19 T.C. 401, 1952 WL 94 (1952), cited by the majority. In that case, the agreement addressed existing alimony rights of the parties. See Bamum, 19 T.C. at 407. Furthermore, it is important to note that the Bamum court was not guided by the temporary Treasury regulation that guides our decision today.

. Of course, Louise did not agree to this. She agreed to receive from John $1.5 million tax free to her over a five-year period.

. Indeed, the premise that the sale of the property to Louise would have been a taxable event but the transfer of the property in satisfaction of the judgment was not leads to the strange result that the tax treatment of the 1992 transaction could have been changed simply by structuring the transaction as a sale of the property to Louise, with the proceeds to be used to satisfy the judgment.

. The majority misunderstands my discussion of fairness. I do not suggest that equitable considerations should trump the language of § 1041 or the applicable regulation. Rather, I only point out that in addition to the fact that the majority’s holding appears unguided by any coherent tax principle and produces anomalous results, it yields a tremendously unfair result for Louise Young.