T.C. Memo. 2016-113

UNITED STATES TAX COURT

JOSEPH R. BELOT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13232-13.                    Filed June 13, 2016.

Petitioner and Ms. Belot formed and jointly owned three businesses during their marriage. They were divorced in 2007. Pursuant to the settlement agreement entered into at the time of petitioner's divorce, they agreed to own and operate the businesses as equal partners. When it became clear that they were unable to operate the businesses together to their mutual satisfaction, Ms. Belot filed a lawsuit against petitioner to gain full control over the businesses. In 2008, 16 months after the initial settlement and divorce, they entered into a settlement agreement under which petitioner transferred his interests in the businesses to Ms. Belot in exchange for payment.

Held: The division of property held during the marriage of petitioner and Ms. Belot accomplished by the 2008 settlement agreement qualifies for nonrecognition treatment under I.R.C. sec. 1041.

[*2]   John J. Eagan, for petitioner.

Rachel L. Schiffman, Shawna A. Early, and Jamie J. Song, for respondent.


MEMORANDUM OPINION


COLVIN, Judge:   Respondent determined that petitioner had deficiencies of $199,625 for 2008 and $287 for 2010 and is liable for penalties under section 6662(a) of $39,925 for 2008 and $57 for 2010.  After concessions, the issue for decision is whether petitioner's sale of his interests in the marital businesses to Ms. Belot pursuant to the 2008 settlement agreement qualifies for nonrecognition treatment under section 1041.[1]  We hold that it does.

The parties submitted this case fully stipulated under Rule 122, reflecting their agreement that the relevant facts could be presented without a trial.  We granted that motion.[2]

---

[1] Section references are to the Internal Revenue Code, as amended and in effect for the years at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.  We have rounded monetary amounts to the nearest dollar.

[2] The burden of proof is generally on the taxpayer, see Rule 142(a), and the submission of a case under Rule 122 does not alter that burden, see Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991).

[*3]                              Background

Petitioner resided in New Jersey when he filed the petition. Petitioner and Ms. Belot (his former spouse) were married from July 1, 1989, through January 8, 2007.

A.      The Marital Businesses

In September 1989 petitioner and Ms. Belot opened a traveling dance school, for which they reported income and expenses on Schedule C, Profit or Loss From Business. In 1996 they incorporated Gotta Dance, Inc. (Gotta Dance), in New Jersey as a C corporation. Its primary business activity was the operation of dance studios. From the time of its incorporation through March 24, 2006, Ms. Belot was the sole shareholder of Gotta Dance.

On March 6, 1997, petitioner and Ms. Belot formed Gotta Dance Boutique, LLC (Boutique). Its primary business activity was the retail sale of dancewear and accessories. From the time of its formation through May 22, 2008, they each owned 50% of Boutique.

On July 1, 1999, petitioner and Ms. Belot formed Jobee Realty, LLC (Jobee). Jobee was treated as a partnership for Federal tax purposes. Its primary business activities involved holding and leasing real estate, including leasing dance studios to Gotta Dance. From the time of its formation through March 24, 2006, Ms. Belot

[*4] owned 49% of Jobee and petitioner owned 51% of Jobee.  Petitioner and Ms. Belot jointly made decisions with respect to Gotta Dance, Boutique, and Jobee (businesses).  Petitioner focused on managing the financial aspects of the businesses.  Ms. Belot was primarily responsible for dance-related aspects of the businesses, including instruction, hiring, training, recruitment, and payroll.

B.    The Divorce and the 2007 Settlement Agreement

In 2005 Ms. Belot hired an attorney and began the process of filing for divorce from petitioner.  On January 24, 2006, the divorce action commenced in the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County (family court).

On March 24, 2006, petitioner and Ms. Belot signed a consent order with the family court.  Pursuant to that order, they equalized their ownership interests in Gotta Dance and Jobee.  Ms. Belot transferred 50% of the stock in Gotta Dance to Petitioner.  This transaction is reflected in a stockholders agreement among Gotta Dance, petitioner, and Ms. Belot.  Also on March 24, 2006, petitioner transferred a 1% interest in Jobee to Ms. Belot.  This transaction is reflected in an operating agreement among Jobee, petitioner, and Ms. Belot.  Once these transactions were complete, petitioner and Ms. Belot each owned a 50% interest in Boutique, Gotta Dance, and Jobee.

[*5]   On January 8, 2007, the family court entered a dual judgment of divorce. The following documents were attached to the dual judgment of divorce:  (1) a settlement agreement dated January 8, 2007; (2) a final consent order regarding custody and parenting time filed March 24, 2006; and (3) a consent order filed on March 29, 2006, which included the Gotta Dance stockholders agreement and the Jobee operating agreement.  The dual judgment of divorce incorporated a property settlement agreement (2007 settlement agreement), which included the March 2006 consent order.

C.    The 2008 Settlement Agreement

On September 21, 2007, Ms. Belot filed a verified complaint for emergent and injunctive and other damages and relief against petitioner and Gotta Dance. Ms. Belot contended that petitioner had mismanaged the business and sought to remove petitioner as director and employee of Gotta Dance and to compel him to sell his shares of Gotta Dance either to the corporation or to Ms. Belot.

On April 11, 2008, petitioner and Ms. Belot entered into a settlement agreement (2008 settlement agreement) regarding the lawsuit.  Pursuant to the 2008 settlement agreement, Ms. Belot agreed to purchase from petitioner all of his interests in Gotta Dance, Boutique, and Jobee for a total of $1,580,000, paid as follows:  (1) $900,000 to be paid at closing and (2) the balance of $680,000,

**[*6]** evidenced by a promissory note, payable in equal monthly installments on the first of each month beginning June 1, 2008, over 10 years bearing interest at the fixed rate of 5% on the principal amount outstanding. The amount of each monthly payment under the promissory note was $7,212.46.

On May 22, 2008, petitioner and Ms. Belot executed a stock and membership interest purchase agreement regarding the ownership of the businesses. The stock and membership interest purchase agreement allocated the total $1,580,000 among the interests in the businesses as follows: (1) $1,080,000 for the interest in Gotta Dance; (2) $475,000 for the interest in Jobee; and (3) $25,000 for the interest in Boutique. Petitioner's basis in each business is not in dispute. Petitioner executed a stock power instrument in which he sold, assigned, and transferred his 500 shares of Gotta Dance, representing a 50% interest, to Ms. Belot. Petitioner also executed an assignment of membership interest in which he transferred his 50% interest in Jobee and 50% interest in Boutique to Ms. Belot. On July 18, 2008, the general equity court entered a consent order of dismissal in the lawsuit.

**[\*7]**                                Discussion

A.     The Issue for Decision

The issue for decision is whether petitioner's sale to Ms. Belot of his

interests in the marital businesses pursuant to the 2008 settlement agreement

qualifies for nonrecognition treatment under section 1041.

B.     Section 1041

Section 1041 provides:

SEC. 1041.  TRANSFERS OF PROPERTY BETWEEN SPOUSES OR
             INCIDENT TO DIVORCE.

        (a) General Rule.--No gain or loss shall be recognized on a
transfer of property from an individual to (or in trust for the benefit
of)--

                (1) a spouse, or

                (2) a former spouse, but only if the transfer is incident to the
        divorce.

                *       *       *       *       *       *       *

        (c) Incident to Divorce.--For purposes of subsection (a)(2), a transfer
of property is incident to the divorce if such transfer--(1) occurs within 1
year after the date on which the marriage ceases, or (2) is related to the
cessation of the marriage.

Congress enacted section 1041 in response to United States v. Davis, 370 U.S. 65

(1962), in which the Supreme Court held that a transfer of appreciated property to a

[*8] spouse (or a former spouse) in exchange for the release of marital claims results in the recognition of gain to the transferor.  The Ways and Means Committee Report accompanying the enactment of section 1041 provided the following reasons for the change:

> The committee believes that, in general, it is inappropriate to tax transfers between spouses.  This policy is already reflected in the Code rule that exempts marital gifts from the gift tax, and reflects the fact that a husband and wife are a single economic unit * * * Often the [current] rules have proved a trap for the unwary, as, for example, where the parties view property acquired during marriage * * * as jointly owned, only to find that the equal division of the property upon divorce triggers recognition of gain.  [H.R. Rept. No. 98-432 (Part 2), at 1491 (1984), 1984 U.S.C.C.A.N. 697, 1134.]

C.    Temporary Regulations

Section 1.1041-1T(b), Q&A-7, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984) (regulation), provides the following (we have numbered the sentences to facilitate our references to the regulation):

> [1] A transfer of property is treated as related to the cessation of the marriage if the transfer is pursuant to a divorce or separation instrument, as defined in section 71(b)(2), and the transfer occurs not more than 6 years after the date on which the marriage ceases. [2] A divorce or separation instrument includes a modification or amendment to such decree or instrument. [3] Any transfer not pursuant to a divorce or separation instrument and any transfer occurring more than 6 years after the cessation of the marriage is presumed to be not related to the cessation of the marriage. [4] This presumption may be rebutted only by showing that the transfer was made to effect the division of property owned by the former spouses at

**[*9]** the time of the cessation of the marriage. [5] For example, the presumption may be rebutted by showing that (a) the transfer was not made within the one- and six-year periods described above because of factors which hampered an earlier transfer of the property, such as legal or business impediments to transfer or disputes concerning the value of the property owned at the time of the cessation of the marriage, and (b) the transfer is effected promptly after the impediment to transfer is removed.

D.   Analysis

Petitioner and Ms. Belot made two attempts to satisfactorily divide their marital businesses. The first attempt was the 2007 settlement agreement, in which they agreed to equalize their interests in the businesses and to run the businesses as partners. The 2007 settlement agreement quickly proved unsatisfactory. In the 2008 (second) settlement agreement, which settled a lawsuit brought by Ms. Belot, petitioner agreed to sell to her all of his interests in the marital businesses in exchange for specified payments.

Respondent does not contend that the division of property under the second settlement agreement was not "made to effect the division of property owned by the former spouses at the time of the cessation of the marriage." Instead, respondent contends that the transfer under the second settlement agreement does not qualify under the regulations because the transfer did not relate to the divorce instrument. We disagree. Respondent's contention that the division of marital property must

**[*10]** relate to the divorce instrument is based on the first, second, and third sentences of the regulation (which refer to the divorce instrument) but overlooks the fourth sentence. The third sentence of the regulation provides that there is a presumption that section 1041 does not apply to "[a]ny transfer not pursuant to a divorce or separation instrument". Consistent with section 1041, the fourth sentence makes clear that the presumption may be rebutted "by showing that the transfer was made to effect the division of property owned by the former spouses at the time of the cessation of the marriage." See, e.g., Young v. Commissioner, 240 F.3d 369, 374 (4th Cir. 2001), aff'g 113 T.C. 152 (1999); see also Barnum v. Commissioner, 19 T.C. 401, 407 (1952). Petitioner has made that showing here.

Respondent contends that petitioner did not rebut the presumption as provided in the fourth sentence of the regulation because petitioner's transfer of his interests in the businesses to Ms. Belot under the second settlement agreement was not due to "legal or business impediments that prevented a transfer called for by the divorce decree". Respondent bases that argument on the fifth sentence of the regulation. We disagree with respondent's argument because the fifth sentence provides examples and does not create a requirement that petitioner must satisfy to rebut the presumption.

**[*11]** Respondent points out that the divorce settlement resolved all of the property issues between petitioner and Ms. Belot. However, neither section 1041 nor the regulations limits application of section 1041 to one, or the first, division of marital property. Respondent points out that in form and in substance the division of the marital businesses made by the second settlement agreement was a sale. However, neither section 1041 nor the regulations bars application of section 1041 to divisions of marital property accomplished through sales. See Young v. Commissioner, 240 F.3d at 374-375. Respondent characterizes Ms. Belot's dissatisfaction with the first settlement agreement as a business dispute. It is true that the marital property at issue consists of stock in businesses operated by petitioner and Ms. Belot during and after their marriage. However, section 1041 and the regulations can apply to marital property which consists of business-related property.

Respondent contends that the fact Ms. Belot filed the 2008 lawsuit in the superior court civil part rather than the family court (which had jurisdiction over petitioner's divorce) shows that the lawsuit concerned a business dispute, not a marital dispute. We disagree. The application of section 1041 to a transfer resulting from the settlement of a lawsuit is not determined by the forum in which the lawsuit is filed. Young v. Commissioner, 240 F.3d at 375.

[*12] In considering respondent's arguments which, if adopted, would add conditions to qualification under section 1041 that are not in the statute or the regulations, we are reminded of the following passage from the Court of Appeals' opinion in Young:

> The policy animating § 1041 is clear. Congress has chosen to "treat a husband and wife [and former husband and wife acting incident to divorce] as one economic unit, and to defer, but not eliminate, the recognition of any gain or loss on interspousal property transfers until the property is conveyed to a third party outside the economic unit." Blatt v. Commissioner, 102 T.C. 77, 80, 1994 WL 26306 (1994) (emphasis added). See also H.R.Rep. No. 98-432, at 1491 (1984), reprinted in 1984 U.S.C.C.A.N. 1134. Thus, no taxable event occurred and no gain was realized by either Mr. or Mrs. Young until Mrs. Young sold the 59 acres to a third party. [Id.]

Respondent urges us to disregard the holding in Young on the basis of alleged factual distinctions between Young and this case, i.e., that in Young, the second settlement agreement resolved a dispute concerning the terms and obligations of the first settlement agreement (relating to the dissolution of their marriage), but here the 2008 settlement agreement did not resolve a dispute concerning the terms and obligations of the 2007 settlement agreement. We disagree that the cases are distinguishable on that basis. In both Young and here, a former spouse alleged shortcomings with implementation of the first settlement agreement by the other spouse, and as a result in both cases the parties negotiated a

**[\*13]** second settlement agreement employing different terms for disposition of their marital assets than were contained in their first settlement agreement. The transfers made pursuant to the second settlement agreements in Young and here were made (as required by the fourth sentence of the regulation) to "effect the division of property owned by the former spouses at the time of the cessation of the marriage"; and as required by section 1041 were "related to the cessation of the marriage."[3]

---

[3]The Court of Appeals in Young v. Commissioner, 240 F.3d 369, 374 (4th Cir. 2001), aff'g 133 T.C. 152 (1999), referred to Priv. Ltr. Rul. 9306015 (Feb. 12, 1993) (ruling) and pointed out that letter rulings may not be cited as precedent. See sec. 6110(k)(3). In the ruling, the Commissioner said sec. 1041 does not apply to the transfer of one spouse's interest in the jointly owned marital house to the other spouse where the spouses had previously agreed that the other spouse had a right to continue to live in the house under various circumstances or to sell the house to a third party. The situation in the ruling is distinguishable from that in Young. Young v. Commissioner 240 F.3d at 374-375. It also is distinguishable from the situation here, where there was no prior agreement to authorize one of the former spouses to sell the marital businesses to a third party. Petitioner and Ms. Belot's ownership of the marital businesses was equalized by the first settlement agreement, but soon petitioner agreed to transfer his entire interest in the marital businesses to Ms. Belot. As discussed in the text, this situation qualifies for sec. 1041 treatment under the terms of the regulations. We also note that the policy of sec. 1041 (to "treat a husband and wife [and former husband and wife acting incident to divorce] as one economic unit, and to defer, but not eliminate, the recognition of any gain or loss on interspousal property transfers until the property is conveyed to a third party outside the economic unit", see supra p. 12) is well served by application of that section here.

**[*14]** E.     <u>Conclusion</u>

We conclude that the sole purpose of the 2008 (second) settlement agreement was to transfer property "incident to the divorce" as that phrase is used in section 1041 and the regulations thereunder.  Thus, the transfer at issue here qualifies for nonrecognition treatment under section 1041.

<u>Decision will be entered for</u>

<u>petitioner</u>.