RAOUL WALSH, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 32317.   Promulgated March 31, 1954.

*Henry C. Diehl, Esq.*, for the petitioner.
*William P. Flynn, Jr., Esq.*, for the respondent.

**OPINION.**

BLACK, *Judge:* Prior to discussing the major issue in this case, there is a question of this Court's jurisdiction of the calendar year 1944.

It has been stipulated that the entire amount of tax claimed by the respondent to be due for the year 1944, including the deficiency proposed and interest thereon, was paid by the petitioner prior to the mailing of the deficiency notice upon which this proceeding is based. The jurisdiction of the Tax Court for 1944 is predicated upon an initial determination of a deficiency by respondent, section 272, Internal Revenue Code. Since there is no deficiency for the Court to redetermine, there is no jurisdiction as to the year 1944. In *Stanley A. Anderson*, 11 T. C. 841, 843, the Court held:

> Since, on the date of the mailing of the letter purporting to be a notice of deficiency, it appears that the tax there involved had already been paid, it must be held that the letter was not a valid notice of deficiency within the definition of the Internal Revenue Code. See Internal Revenue Code, section 271 (a). The inescapable prerequisite of our jurisdiction is consequently lacking. Cf. *Will County Title Co.*, 38 B. T. A. 1396. * * *

The proceeding will, therefore, be dismissed as to the year 1944 for lack of jurisdiction.

The major issue to be decided is whether the payments made by petitioner in 1945 to his former wife, Miriam, are deductible under section 23 (u) of the Code. The applicable statutory provisions are printed in the margin.[1] Respondent's argument is based on the earlier

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise), in discharge of, *a legal*

decision of this Court holding that the payments received in 1942 and 1943 by petitioner's former wife, Miriam, pursuant to the same agreement involved here were not income to her under section 22 (k). *Miriam Cooper Walsh*, 11 T. C. 1093, affd. (C. A., D. C. Cir., 1950) 183 F. 2d 803. Petitioner contends that the above decisions were incorrectly decided. We agree with petitioner.

However, at the outset of this discussion we should point out that the *Miriam Cooper Walsh* case, *supra*, did not involve the taxability to her of life insurance premiums which Raoul had paid on insurance policies taken out on his life. The Commissioner in that case had determined his deficiencies by including in Miriam's income the $225 per week cash payments which had been paid to her under the terms of the November 13, 1941, agreement. Nothing was included in her income by reason of the premiums which Raoul had paid on his life insurance policies.

In the instant case it has been stipulated that petitioner paid, in the taxable year 1945, $3,523.65 net premiums on these policies and he is claiming this amount as a part of the alimony which he paid Miriam in 1945. Under the rationale of our recent decision in *Lillian Bond Smith*, 21 T. C. 353, we do not think this claim can be sustained. In the *Smith* case we held that the premiums paid on a policy of insurance were not includible in the wife's gross income as alimony under section 22 (k), Internal Revenue Code, since she had only a contingent interest in the policy and it was not for her sole benefit. In so holding, we said:

The petitioner argues that she is not the owner of the policy; that it is not for her sole benefit; that her rights and interest in the policy are contingent upon her death or remarriage; and that although the separation agreement does not specifically so provide, the obvious intent and purpose of the provision of the agreement requiring Sydney to keep the insurance in force, is to secure to the petitioner support payments in the event she remains unmarried and survives Sydney. The petitioner relies, principally, on *Meyer Blumenthal*, 13 T. C. 28, affd. 183 F. 2d 15, and a Memorandum Opinion of this Court. We agree with the petitioner.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

It is clear from the terms of the policy, and from the provisions of the separation agreement that the petitioner's rights under the policy are contingent on her death or remarriage. \* \* \*

It is therefore apparent that the petitioner's only interest in the policy is contingent, and that the premiums on the policy were not paid for her sole benefit. \* \* \*

---

*obligation which, because of the marital or family relationship,* is imposed upon or incurred by such husband *under such decree or under a written instrument incident to such divorce or separation* shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. \* \* \* [Emphasis added.]

We think it also may be correctly said in the instant case that Miriam's only interest in the policies of insurance on Raoul's life is contingent and that the premiums on the policies were not paid for her sole benefit. She will only receive benefits from these policies in case she survives Raoul. We sustain the Commissioner in his disallowance of the $3,523.65 net premiums which petitioner paid on the insurance policies in 1945. They did not represent periodic payments of alimony to Miriam.

We shall next turn our attention to the deductibility of the $11,700 which petitioner paid to Miriam in weekly installments of $225 during the year 1945.

Section 22 (k) of the Code sets forth prerequisites which must be satisfied before such payments are includible in the former wife's income, hence deductible by the husband. They are: (1) There must be a divorce or legal separation under a decree of divorce or of separate maintenance, (2) the payments must be periodic, although they need not be made at regular intervals, (3) only those payments made and received subsequent to the decree qualify, (4) the payments must be in discharge of a legal obligation arising out of the marital or family relationship, (5) the obligation must be imposed upon or incurred by the husband under the decree or under a written instrument incident to the divorce or separation, and (6) the subsection does not apply to such portion of the payments as the decree or written instrument fixes as a sum payable for the support of minor children. The Commissioner makes no argument that petitioner has not met all the tests named above except those named in (5). He does contend, however, that the payments were not made under a written instrument incident to the divorce or separation agreement as provided in (5) above. It is conceded by the petitioner that the payments were not made under the decree of divorce itself.

The essential facts of the instant case can be stated briefly. Contemplating a divorce, petitioner and his former wife, Miriam, entered into a written agreement in 1927, which included provision for weekly payments of $500. It has been stipulated that this agreement was entered into because the parties intended to be divorced. Subsequently, petitioner and Miriam were divorced, the final decree entered in 1928 without incorporating the 1927 written agreement or any other provisions for alimony. The weekly payments were reduced twice under later agreements in 1934 and 1941. None of the later agreements were incorporated in the divorce decree. The 1945 payments in dispute here were made pursuant to the 1941 agreement and included 52 weekly payments of $225 each, and $3,523.65 net premiums on life insurance policies. We have already held that the $3,523.65

life insurance premiums paid by petitioner on policies taken out on his own life were not payments of alimony to Miriam and, therefore, not deductible under section 23 (u).

California law, under which the decree in this case was entered, provides that if the decree of divorce merely refers to an agreement, or approves it, but does not make the agreement a part of the decree, the agreement cannot be enforced under the decree. *Howarth* v. *Howarth*, 81 Cal. App. 2d 266, 183 P. 2d 670 (1947) ; *Baxter* v. *Baxter*, 3 Cal. App. 2d 676, 40 P. 2d 536 (1935) ; *Schnerr* v. *Schnerr*, 128 Cal. App. 363, 17 P. 2d 749 (1932). Therefore, under California law none of the various agreements in the case at bar were enforceable under the divorce decree.

The payments in question were made under a revised written agreement subsequent to the divorce decree, and neither the original agreement prior to the divorce nor the revised agreement was incorporated in the decree. The legal question thus raised is whether the payments of $225 per week in 1945 were "in discharge of a * * * legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband *under such* [divorce or separation] *decree or under a written instrument incident to such divorce* or separation * * *," (emphasis added) under section 22 (k).

From considerable litigation involving the deductibility of alimony payments pursuant to written agreements not incorporated in divorce decrees, there have emerged two conflicting general views regarding a basic concept of sections 22 (k) and 23 (u). One view is exemplified by the language of the United States Court of Appeals for the District of Columbia Circuit in *Miriam Cooper Walsh, supra,* as follows:

Second, it is not disputed that there must be a decree of divorce or a decree of separation before this section of the statute has any application. It is also settled that "divorce" as used in the phrase "incident to such divorce or separation" means more than mere status. As was held in the Cox case, it refers to the actual dissolution of the marriage ties. Since such dissolution can be accomplished only under a decree, if Section 22 (k) is to apply, "divorce" or "separation" as used in the phrase "incident to such divorce or separation" must mean *decree of divorce or decree of separation.* * * * [Emphasis added.]

The second view, developed later, regards the statutes in question as indicating a "congressional policy of placing the tax burden of all general marriage settlement payments on the party entitled to their enjoyment," *Lerner* v. *Commissioner*, (C. A. 2, 1952) 195 F. 2d 296, reversing 15 T. C. 379. The circuit court elaborated as follows:

The term "written instrument incident to such divorce" was designed, we think, only to insure adequate proof of the existence of the obligation when divorce has occurred, and not to deny relief to the husband when merely legal formalities have not been rendered their full due. So where the payments obviously take the place of alimony and otherwise satisfy the stringent requirements of I. R. C. Section 22 (k), although not formally incorporated into the decree, they should

not be denied effect under the statute merely because there is no evidence that divorce and settlement were not contemporaneously planned and carried out. Compare *Smith* v. *C. I. R.*, 1 Cir., 192 Fed. (2d) 841, which goes somewhat farther than we are here called upon and holds within the statutory ambit even a later and post-divorce revision of an earlier agreement.

See also *Rowena S. Barnum*, 19 T. C. 401; *Elizabeth E. Guggenheim*, 16 T. C. 1561; *Bertram G. Zilmer*, 16 T. C. 365; *Estate of Daniel G. Reid*, 15 T. C. 573, affd. 193 F. 2d 625.

The purpose of Congress in enacting the statutes in question was discussed in *Smith* v. *Commissioner*, (C. A. 1, 1951) 192 F. 2d 841, affirming 16 T. C. 639. In that case the circuit court said as follows:

This section was explained in the Report of the Ways and Means Committee (H. Rep. No. 2333, 77th Cong., 2d sess., pp. 71–72 (1942–2 Cum. Bull. 372, 427)) in which it was stated that Section 22 (k) was added:

'in order to provide in certain cases a new income tax treatment for payments in the nature of or in lieu of alimony or an allowance for support as between divorced or legally separated spouses. These amendments are intended to treat such payments as income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payments is under the present law includible in his gross income. In addition, the amended sections will produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the existence and continuance of an obligation to pay alimony.'

\*        \*        \*        \*        \*        \*        \*

The origin or motive for the 1944 agreement can be traced to no obligation other than one arising from a family or marital relationship. This being so, the conditions of Section 22 (k) are fully satisfied. Congress recognized that the obligation could be set up either by contract or decree. It is stated in the Report of the Committee on Finance (S. Rep. No. 1631, 77th Cong., 2nd Sess. p. 84):

'This section applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree.'

We think that the language of the statute and the purpose of Congress were to recognize a contractual obligation incident to the status of a divorce, as well as an obligation under a decree, by sections 22 (k) and 23 (u). Congress provided for deductions of periodic payments "under such decree or under a written instrument incident to such divorce." The language following the word "decree" alternatively indicates a second criterion, that of divorce status, as distinguished from the decree of divorce or decree of separation. This is supported by legislative intent and the weight of judicial opinion.

Going back to the specific facts of the instant case, if the payments in question had been made pursuant to the 1927 original agreement they would, in our opinion, unquestionably be deductible. Since that agreement was entered into in contemplation of divorce, took the place of alimony, and was incident to the divorce, the section 22 (k) requirement is satisfied even though the agreement was not

mentioned in the divorce decree. *Lerner* v. *Commissioner, Estate of Daniel G. Reid, Bertram G. Zilmer,* and *Elizabeth E. Guggenheim,* all *supra, Floyd W. Jefferson,* 13 T. C. 1092.

The 1941 agreement, though subsequent to the divorce, clearly came about as a direct revision and cancellation of the 1927 and 1934 agreements. The nature, origin, and purpose of petitioner's obligations under the 1941 agreement were substantially similar to the 1927 agreement, the primary change being a reduction of payments. Since the 1927 agreement was incident to a divorce, the subsequent 1941 agreement, though canceling the earlier agreements, constituted a revision and reappraisal of the parties' position by altering terms only and this agreement was also "incident to a divorce" under section 22 (k). *Smith* v. *Commissioner, supra; Rowena S. Barnum, supra; Jane C. Grant,* 18 T. C. 1013, affd. (C. A. 2) 209 F. 2d 430; *Mahana* v. *United States,* (Ct. Cl. 1950) 88 F. Supp. 285, certiorari denied 339 U. S. 978; and *Commissioner* v. *Murray,* (C. A. 2, 1949) 174 F. 2d 816, reversing T. C. Memorandum Opinion. See also *Walsh* v. *Westover,* 53–1 U. S. T. C., par. 9823, —— A. F. T. R. ——. In this latter case which involved the year 1944, which we are dismissing in the instant proceeding for lack of jurisdiction, the United States District Court for the Southern District of California made a conclusion of law based upon facts which are essentially the same as we have here, as follows:

III. The payments made by plaintiff during the calendar year 1944 to his former wife Miriam Cooper Walsh in the total amount of $11,700.00 constituted periodic payments made by him and received by her subsequent to a decree of divorce in discharge of a legal obligation which, because of the marital or family relationship, was imposed upon or incurred by plaintiff under a written instrument incident to such divorce, no part of which payments was payable for the support of minor children.

The other requirements of sections 22 (k) and 23 (u) are obviously satisfied and are not contested by respondent. We hold, therefore, that the payments in question are deductible by petitioner. In so holding, we reverse our holding in *Miriam Cooper Walsh, supra,* and respectfully decline to follow the circuit court's affirmance of *Miriam Cooper Walsh, supra.* We think the weight of authority is against it.

Petitioner's total payments to his former wife, Miriam, in the year 1945, exclusive of the insurance premiums, were $11,700 from community income. Since petitioner filed his 1945 return on a community property basis, having remarried, petitioner deducted under section 23 (u) only $7,611.83 representing his community one-half of the payments, including insurance premium payments claimed as deductions. Petitioner's treatment of claiming only one-half of the deductions is in accordance with our prior decisions in *Robert A. Sharon,* 10 T. C. 1177, decision vacated and remanded, in accordance with stipulation of the

parties, by the Fifth Circuit on September 29, 1949, and with *Commissioner* v. *Newcombe*, 203 F. 2d 128, affirming our Memorandum Opinion. Petitioner in his petition raises an alternative issue seeking the deduction of the total $15,223.65 payments in the event the legal principle of the cases just cited above is reversed, but petitioner does not seek the total deduction if we concur in our prior decisions. We think the above cases were correctly decided and accordingly the amount of petitioner's 23 (u) deduction will be his community one-half of the $11,700 alimony payments made to Miriam. Petitioner's contention for a deduction of the entire amount of $15,223.65 is denied.

Petitioner does not contest the imposition of the penalty for the year 1945. It will, therefore, be imposed upon whatever deficiency, if any, there is for that year in a computation under Rule 50.

Reviewed by the Court.

> *Order will be entered dismissing the proceeding as to the year 1944 for lack of jurisdiction. As to the year 1945, decision will be entered under Rule 50.*