612

BEULAH WEIL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.*

CHARLES S. WEIL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES S. WEIL AND ADREANA WEIL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43366, 43858, 50411.   Filed June 22, 1954.

*Charles Kurz, C. P. A.,* for the petitioner Beulah Weil.

*Hiram S. Gans, Esq.,* for the petitioners Charles S. Weil and Adreana Weil.

*Richard G. Maloney, Esq.,* for the respondent.

*See also supplemental report, 23 T. C. 630.

OPINION.

HARRON, *Judge:*

*Issue 1: Insurance Premiums.*

The respondent takes the position in these proceedings that the sums applied by Charles for the payment of insurance premiums during the taxable years were not received by Beulah, directly or constructively, within the meaning of section 22 (k) of the Internal Revenue Code, and that, therefore, deductions for such payments are not allowable to Charles under section 23 (u) of the Code. He claimed deductions, in his amended petitions, for the payments, as alimony payments, in the amount of $1,278.72 and $1,322.41 in 1947 and 1948.

In taking the above position, the respondent now abandons his determination in his amended answer in the case of Beulah, that she is taxable for the insurance premiums paid in 1947.

The questions to be decided are whether Beulah either became the sole and irrevocable beneficiary of the insurance policies, or was able to realize immediate cash benefits under the policies. See *Anita Quinby Stewart*, 9 T. C. 195; *Lemuel Alexander Carmichael*, 14 T. C. 1356; *Estate of Boies C. Hart*, 11 T. C. 16. If these questions cannot be answered affirmatively, and if it is held that Beulah's interest in the policies is only a contingent one with only a remote possibility of her obtaining economic benefit; and if the purpose of the provisions in the agreement of August 9, 1940, was to keep the policies alive so as to secure to Beulah support payments in the event she remains single

and survives Charles; then it must be held that the sums applied to pay premiums do not come within section 22 (k). *Meyer Blumenthal*, 13 T. C. 28, affd. 183 F. 2d 15; *Halsey W. Taylor*, 16 T. C. 376; *F. Ellsworth Baker*, 17 T. C. 1610, 1615, affirmed on this issue (C. A. 2) 205 F. 2d 369; *William J. Gardner*, 14 T. C. 1445, 1447, affd. 191 F. 2d 857; *Estate of Frank Charles Smith* v. *Commissioner*, 208 F. 2d 349; *Seligmann* v. *Commissioner*, 207 F. 2d 489; *Lilian Bond Smith*, 21 T. C. 353; *Raoul Walsh*, 21 T. C. 1063.

Petitioner Charles argues that, in effect, there was assignment of the policies to Beulah. Also, he asserts that the rationale of the *Seligmann* and *Lilian Bond Smith* cases is based upon misconceptions which lead to incorrect conclusions.

We cannot agree with petitioner Charles. Upon consideration of the entire agreement of August 9, 1940, and all relevant facts in the record before us, it is held that Beulah was not the owner of any of the insurance policies and that none of them ever have been assigned to her. The policies were delivered to her only "for safekeeping."

Beulah could not change the named beneficiaries of any of the policies. Increase in the cash surrender value of the policies resulting from the payment of premiums was not available to her and provided no immediate economic benefit to her. Whatever rights in the policies Beulah acquired were defeasible since they depended upon contingencies, and their value cannot be measured. It is clear that the provisions of Article 12 of the agreement with respect to Beulah's remarriage during Charles' lifetime were designed to divest her interest in the policies. The only conclusion is that Beulah's interest in the insurance is contingent. Only if she survives Charles without remarrying will Beulah, on the death of Charles, acquire a right to receive monthly income payments under the insurance policies. The children are the remainder beneficiaries. If Beulah remarries even after the death of Charles she will lose one-half of her insurance benefits.

It is not certain that the payment of the insurance premiums will ever benefit Beulah; her remarriage while Charles lives or her death would terminate her rights in the policies.

It is held that the amount of the premium payments is not income to Beulah under section 22 (k) and the payments are not deductible by Charles under section 23 (u). The cases cited by petitioner Charles are distinguishable.

*Issue 2: Payments for the Support of Beulah and for the Maintenance and Support of the Children.*

Section 22 (k) of the Code provides, in part, as follows:

This subsection shall not apply to that part of any such periodic payment which the terms of the decree or written instrument fix, in terms of an amount of money

or a portion of the payment, as a sum which is payable for the support of minor children of such husband.

The narrow question under this issue is whether the agreement of August 9, 1940, fixed as a sum which is payable for the support of the minor children of Charles some part of the periodic payments he is obligated to pay Beulah either in terms of an amount of money or in terms of a portion of the periodic payments.

Charles contends that the agreement does not make provision for separability of periodic payments into either an amount or a portion as a sum payable for the support of his minor children. He claims that, therefore, 100 per cent of the periodic payments which he is obligated to make is taxable to Beulah under section 22 (k) and is deductible from his income under section 23 (u).

Beulah contends that the agreement fixes $4,800 per year, or $400 per month, as a part of the periodic payments as a sum which is payable for the support of the minor children. She claims that she is entitled to exclude from her income for 1947, $4,800 out of the $10,500 she received from Charles in that year. In her case, the year 1948 is not before us, but if her theory were to be sustained it would follow that she will be entitled to exclude from her income for 1948, $4,800 out of the $8,320.80 she received in 1948, the amount which Charles paid in 1948 pursuant to the requirements of the agreement. (It has been found that Charles paid, in 1948, $279.20 more than he was required to pay under the agreement.)

It has been held that an "adequate consideration of the problem here presented requires a construction of the agreement as a whole, and the reading of each paragraph in the light of all the other paragraphs thereof." *Robert W. Budd*, 7 T. C. 413, affirmed per curiam 177 F. 2d 198. It has been noted, also, that "each case depends upon its own facts and specifically on the terms and provisions of the decree or written instrument." *Warren Leslie, Jr.*, 10 T. C. 807, 810; *Harold M. Fleming*, 14 T. C. 1308. See also *Mandel* v. *Commissioner*, 185 F. 2d 50. Cf. *Dora H. Moitoret*, 7 T. C. 640.

Upon considering the entire agreement of August 9, 1940, considering each article and each subsection with the other, we conclude that the agreement fixes a portion of the periodic payments, namely, 50 per cent, as a sum which is payable for the support of the two minor children, or 25 per cent, as a sum which is payable for the support of each minor child. It is held, therefore, that in 1947, Charles cannot deduct under section 23 (u) $6,000 out of the $10,500 which he paid Beulah pursuant to the requirements of the agreement because Beulah, under section 22 (k), does not have to include $6,000 of the total sum she received in her taxable income; and that in 1948, Charles can deduct $4,910.40, which is includible under section

22 (k) in Beulah's income, but he cannot deduct $3,410.40, one-half of the required 1948 payments, because Beulah will not have to include that amount in her income, under section 22 (k). Our reasons for arriving at this conclusion are as follows:

The agreement taken as a whole clearly expresses the intention of providing for the support of both the children and Beulah, for a separability of the periodic payments into payments for the support of Beulah on the one hand, and for the support of the children on the other hand. Article 7, for example, indicates such separability in providing that the children, as well as their mother, shall not have any right or power to anticipate any payments or to assign or encumber their interests in them. We do not think that Article 7 becomes operative as to the children only in the event Beulah remarries, which would follow if we construed the agreement as not providing for separability of the payments during the period in which Beulah remains single. This intention has to be considered, however, in the light of the method set forth for varying the amount of the annual sum to be paid to Beulah in accordance with variations in the "net income," as defined, of Charles. If his "net income" exceeds $24,000 in any year, the total sum payable to Beulah will increase above $9,600 a year and it will not be more than $12,000. If his "net income" falls below $18,000 in any year, the total sum payable to Beulah will be less than a basic amount of $9,600, but not less than $5,000. It is not in harmony or consistent with the provisions for fluctuations in the annual sum to be paid to Beulah for the support of herself and the two children to regard the agreement as fixing $4,800 as an amount of money which is the sum which is payable for the support of the minor children regardless of fluctuations in the annual amount she will receive. Beulah's theory when it is worked out under possible variations each year in the total required amounts is inconsistent with and contrary to the ratio which was obviously intended, starting with the basic sum of $9,600. Her theory reaches an extreme result when the minimum required amount of $5,000 is considered, for if the required total amount falls to the minimum of $5,000, and if $4,800 is the sum fixed by the agreement as a sum payable for the support of the children, then only $200 is left to cover a year's support of Beulah. On the other hand, if the agreement is seen as fixing "a portion" of the total required annual payment rather than as fixing "an amount" of the required annual payment as "a sum which is payable for the support of minor children" (following the wording of section 22 (k)) a harmonious and a reasonable procedure is found which is consistent with the system of making adjustments in the basic amount of $9,600 per annum for fluctuations in the "net income" of Charles.

The agreement clearly makes an annual payment of $9,600 per year, or $800 per month, the norm, or the basic amount of the total periodic payments for the support of Beulah and for the support of the two minor children. The sum of $9,600 per year, or $800 per month, is what Charles is required to pay if his "net income" is from $18,000 to $24,000 a year, and adjustments increasing or decreasing this basic sum depend upon whether his "net income" goes above $24,000 or below $18,000 in any year. Next, in Article 14, it is provided that Charles will pay $400 per month for the support, maintenance, and education of the children (or $200, if one should die). It is observed that $400 is one-half of $800. Reading Articles 13 and 14 together, it is apparent that there was an intention that of the basic amount, $800 per month— $9,600 per year—one-half was to be for the support of Beulah and one-fourth was to be for the support of each child (one-half for the support of two children).

The annual amount to be paid by Charles may be different from year to year. That is demonstrated in the years before us, for Charles was obligated under Article 13 to pay a total amount of $12,000 in 1947 and only $6,820.80 in 1948. We think it was intended that the provisions of the agreement would be flexible so as to jibe with fluctuations in Charles' payments. The facts in this proceeding show that fluctuations occurred also in the actual payments which Charles made of the amount which he was obligated to pay each year. For example, although he was obligated to pay $12,000 in 1947, he paid only $10,500; and although he was obligated to pay $6,820.80 in 1948, he was in arrears for 1947 and he paid, in 1948, the arrearage of $1,500 in addition to what he was obligated to pay in 1948.

Since the agreement clearly and repeatedly mentions that payments shall be made for support of the children as well as support of their mother, and since the agreement makes very explicit provisions for varying the total amount to be paid for both purposes, it seems clear to us that it was intended that variations in the amounts to be paid for the support of the children, as distinguished from the support of their mother, should and could be worked out under the agreement. In other words, one amount, the sum to be paid for the support of the children was not to be a rigid sum (such as $4,800 per year for as long as Beulah did not remarry) while the other amount, the sum to be paid for the support of Beulah, was to be a variable sum. The necessary flexibility is provided by using a percentage, 50 per cent or 25 per cent, as the measure of the portion of the periodic payments which is the sum to be used for the support of two minor children or a minor child.

That 50 per cent of the periodic payments is for the support of the children is also demonstrated by subsection (j) of Article 13 which

is quoted in our Findings of Fact. If the eldest son attains the age of 23 years and if Charles requests that no further contribution shall be made by Beulah for the support of that child out of the periodic payments she receives from Charles, and if Beulah continues to make payments to such child for his support contrary to Charles' request, then Charles has the right to reduce the periodic payments by 50 per cent. This provision must refer to the portion of periodic payments which is for the support of the children. Charles did not exonerate himself, under the agreement, from an obligation to support his sons after each became 21 years of age, but subsection (j) of Article 13 provides a means whereby Charles may, if he wishes, terminate the provision for their support upon their reaching 21 years of age. The son Charles was born in 1928, and Donald was born in 1930. When Charles became 23 years of age, in 1951, Donald was 21 years of age. It is apparent that the terms of subsection (j) are such as to enable the father to reduce the periodic payments to Beulah when his eldest son reaches the age of 23 and the youngest reaches the age of 21, thereby terminating payments under the agreement for the support of the children.

All of the above is, in our opinion, what is involved here in considering the agreement as a whole, as we have previously said we must do. *Robert W. Budd, supra.* We think such consideration of the agreement must lead to the conclusion, the conclusion which we reach, that the agreement fixed "a portion of the payment", namely 50 per cent, "as a sum which is payable for the support of minor children."

Petitioner Charles argues that no consideration should be given at all in these proceedings to the provisions of Article 14 because it relates to such time as Beulah remarries, i. e., Article 14 is to take the place of Article 13 if Beulah remarries. To this argument we reply that the same argument was made in the *Leslie* case, *supra*, but we did not regard it as significant. We do not think it makes any difference here that Article 14 is the place where the sum of $400 per month for the support of two children is mentioned. We must consider the agreement *as a whole*, and we regard Article 14 as a very enlightening provision to which we may not close our eyes.

We have considered the cases cited by petitioner Charles. He relies chiefly on the *Moitoret* case, *supra.* He refers also to several unreported Memorandum decisions of this Court. The cases relied upon are distinguishable on their facts.

We have had to consider another question of fact, namely, whether a payment of $500 which Charles made to Beulah in January of 1947 was a part of the alimony payments for 1947, or was a reimbursement to Beulah for the last quarter of her income tax for 1946, as she contends. Charles was obligated to make payments aggregating $12,000 in 1947. His total payments amounted to $10,500. The evi-

dence about the nature or purpose of a payment of $500 is conflicting. Charles denies that the $500 in question was to reimburse Beulah for taxes. Beulah, in our opinion, has failed to prove that the disputed payment was to reimburse her for a part of her tax payments for 1946 and was not part of the periodic alimony payments. Therefore, it has been found that Charles paid Beulah $10,500 in 1947, rather than $10,000, in partial payment of his obligation to pay her $12,000 in that year.

The respondent, by amended answer, determined that Beulah is taxable for $490 in 1947 for an alleged alimony payment. However, Charles has conceded that this sum was not part of the alimony payments and that he cannot deduct it under section 23 (u). It is held that $490 was not income to Beulah in 1947 under section 22 (k).

*Decisions will be entered under Rule 50.*