Robert L. Montgomery, Jr., and Elizabeth B. Montgomery v. Commissioner.
Montgomery v. Commissioner
Docket No. 35891.
United States Tax Court
T.C. Memo 1954-79; 1954 Tax Ct. Memo LEXIS 171; 13 T.C.M. (CCH) 578; T.C.M. (RIA) 54185; June 25, 1954, Filed Joseph W. Price, III, Esq., 1617 Land Title Building, Philadelphia, Pa., for the petitioners. Max J. Hamburger, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioners' income taxes for the taxable years 1946 and 1947, in the respective amounts of $765.70 and $934.61. The sole issue presented is whether in the taxable years involved the petitioners are entitled to deduct certain weekly amounts paid by petitioner Robert L. Montgomery, Jr., to his former wife, Catharine E. Montgomery, and insurance premiums paid on a policy assigned to her, as periodic payments under section 23(u) of the Internal Revenue Code. Findings of Fact The stipulated facts are found accordingly. Petitioners, husband and wife, are residents *172 of Cynwyd, Montgomery County, Pennsylvania. Their joint income tax returns for 1946 and 1947 were filed with the collector of internal revenue for the first district of Pennsylvania, at Philadelphia. As petitioner Elizabeth B. Montgomery is involved by reason of having filed a joint return, Robert L. Montgomery, Jr., will be referred to herein as petitioner. On March 19, 1930, petitioner married Catharine E. Montgomery. Marital difficulties developed shortly after the marriage. On February 15, 1934, petitioner moved from his home and lived at the Penn Athletic Club, Philadelphia, Pennsylvania. The petitioner, thereafter, did not communicate with his wife, except for one or two brief telephone conferences. On November 24, 1934, Catharine E. Montgomery filed an action for divorce against petitioner in the Court of Common Pleas of Philadelphia County, Pennsylvania. On January 2, 1935, petitioner's attorney, John W. Dickerson, entered an appearance for petitioner in that action. Catharine E. Montgomery never prosecuted the action to completion. At some time prior to July 17, 1935, petitioner consulted his attorney with a view toward instituting a divorce action on his own behalf, *173 and his attorney advised him that he would not handle the case unless petitioner made generous and fair financial provisions for the support, maintenance, and livelihood of Catharine E. Montgomery for the remainder of her life. Petitioner agreed, and, thereupon, his attorney and the attorney for his wife, Catharine E. Montgomery, commenced and conducted all subsequent negotiations on behalf of the parties. On July 17, 1935, petitioner instituted an action in the Court of Common Pleas of Philadelphia County, Pennsylvania, for an absolute divorce from his wife, Catharine E. Montgomery. On August 24, 1935, the complaint was served on Catharine E. Montgomery, who neither filed an answer nor appeared in such action. On October 5, 1935, a 15-year endowment policy, No. 2,584,632, for $10,000, which had been issued by the Northwestern Mutual Life Insurance Company on the life of petitioner on October 29, 1934, was split into two separate policies. One policy, No. 2,584,632 1/2 was a $2,000 15-year single premium endowment policy, and the other, retaining the original number, 2,584,632, was an $8,000 15-year endowment life policy requiring the payment of premiums until maturity. The policy *174 was split for purposes of the agreement then being negotiated on behalf of petitioner and Catharine E. Montgomery. On October 17, 1935, petitioner and his wife executed an agreement which provides in pertinent part as follows: "WHEREAS, the parties hereto were married on the 19th day of March, 1930; and "WHEREAS, divers disputes and unhappy differences have arisen between the parties hereto; and "WHEREAS, they have been, since the 15th day of February, 1934, living separate and apart and all marital relationships ceased prior to that date; and "WHEREAS, it is the purpose of the parties hereto to amicably adjust their property rights and/or interests and to provide for the maintenance and support of the said Catharine E. Montgomery; * * *
"1. That Robert L. Montgomery, Jr., husband, does hereby release all rights, interest, claims, demands and privileges in or to any or all real estate or personal property now owned by the said Catharine E. Montgomery, wife, as her personal estate, as well as any and all real and personal property which the said Catharine E. Montgomery may in the future acquire. "2. That Robert L. Montgomery, Jr. shall transfer to Catharine E. Montgomery, *175 or her nominee, premises 642 West Ellet Street, Philadelphia, Pennsylvania, and that he hereby agrees to pay all of the encumbrances against the said property, including the 1935 taxes, and a mortgage of $3,000, within six years from the date hereof. * * * "3. That Robert L. Montgomery, Jr. hereby relinquishes any and all right, title and interest that he may have in or to any household furniture and/or personal property now located in Premises 642 West Ellet Street, Philadelphia, and hereby assigns and transfers to Catharine E. Montgomery any and all his right, title and interest in the aforesaid property. "4. That Robert L. Montgomery, Jr., agrees to pay to Catharine E. Montgomery, at the time of the signing of this Agreement, the sum of One hundred twenty-five ($125.00) Dollars; the receipt whereof is hereby acknowledged. "5. That Robert L. Montgomery, Jr. hereby agrees to pay to Catharine E. Montgomery on Saturday of each and every week hereafter the sum of Twenty-five ($25.00) Dollars for and during the term of her natural life; provided, however, that in the event the parties hereto shall be divorced and Catharine E. Montgomery remarries, then all payments under this Paragraph *176 shall cease and terminate immediately upon her remarriage. "6. (a) That Robert L. Montgomery, Jr. hereby agrees to secure by exchange or purchase a fifteen year endowment life insurance policy or policies upon his life in the sum of Eight thousand ($8,000.00) Dollars, payable in the event of his death or at the expiration of the term of the policy, to wit: fifteen years, which is to be assigned to Catharine E. Montgomery as hereinafter provided; and to promptly pay the premium or premiums as they become due at all times during the life of said policy or policies, and not in any way lien, encumber or affect the validity of the same; and it is expressly agreed and understood, however, that any dividend or dividends or interest payable on said policy or policies shall be the property of and paid to Robert L. Montgomery, Jr., as and when the same accrue. "(b) That Robert L. Montgomery, Jr. hereby agrees to secure by exchange or purchase a Two Thousand ($2,000) Dollars single premium fifteen year endowment life insurance policy upon his life, payable in the event of his death or at the expiration of the term of the policy, to wit: fifteen years, which is to be assigned to Catharine *177 E. Montgomery as hereinafter provided; and not in any way lien, encumber or affect the validity of the same. It being expressly agreed and understood, however, that any dividend or dividends or interest payable on said policy shall be the property of and paid to Catharine E. Montgomery as and when the same accrue. "That the said fifteen year Endowment Life Insurance Policy, in the sum of Eight thousand ($8,000) Dollars, and the said Two thousand ($2,000) Dollars single premium fifteen year Endowment Life Insurance Policy shall be duly assigned to Catharine E. Montgomery; said assignments to include the cash surrender value of both the aforesaid policies and all dividends or interest payable on said Two Thousand ($2,000) Dollars single premium fifteen year Endowment Life Insurance Policy, as aforesaid. "All of said assignments are to be approved by the Company or Companies, and the policies, together with the aforesaid assignments, shall be delivered to Catharine E. Montgomery and remain in her possession during the term thereof. "It is specifically understood and agreed that the surrender value of all policies shall be paid to Catharine E. Montgomery in the event any one or all *178 of said policies should be cancelled for any reason whatsoever. "In the event that Catharine E. Montgomery predeceases Robert L. Montgomery, Jr., then all her rights in and to said policy or policies by reason of said assignment, or otherwise shall cease and determine and the assignment shall become null and void, and in that event she hereby assigns and transfers any and all right, title and interest in and to said policies unto Robert L. Montgomery, Jr., and she hereby directs and authorizes the personal representatives of her estate to do any and all things and to make and execute any and all agreements necessary for the full and complete carrying out the terms of this provision; and she further expressly agrees that in the event she predeceases Robert L. Montgomery, Jr., the Company or Companies in which said insurance has been procured shall consider and treat the said Robert L. Montgomery, Jr. as the only party having any right, title or interest therein, and she hereby releases and forever discharges the said Company or Companies from any and all liability to her or that her personal representatives might have under any assignment or assignments of said policies to her. *179 * * *
"10. That Catharine E. Montgomery hereby waives any and all right or claim of any support, maintenance, alimony or counsel fee and accepts the provisions of this Agreement, in full settlement and satisfaction thereof, so long as Robert L. Montgomery, Jr. complies with the terms of this Agreement. "11. That Catharine E. Montgomery does hereby release and forever discharge Mrs. Lillian Montgomery, mother of the said Robert L. Montgomery, Jr. of any suits, claims or demands of any kind or character whatsoever, prior to the date hereof. * * *
"13. It is understood and agreed by the parties hereto that this Agreement is not entered into in contemplation of any divorce proceedings, or is there any agreement or understanding that either party shall supply or furnish to the other party evidence for a divorce. That neither party hereto waives his or her right to apply for or to defend any proceedings whatsoever, and that they are entering into this Agreement solely for the purpose of adjusting the property rights and/or interests and to provide for the maintenance and support of the said Catharine E. Montgomery, and for the release to Mrs. Lillian Montgomery as set forth *180 in paragraph 11 hereof." The provision in the agreement relating to the release by Catharine E. Montgomery of petitioner's mother, as set forth in paragraphs 11 and 13, supra, was inserted at the request of petitioner, who did not want his mother bothered in the event he was later unable to meet the terms of the agreement. Catharine E. Montgomery had not asserted any claim against petitioner's mother. Paragraph 13 of the agreement was inserted at the insistence of petitioner's counsel, John W. Dickerson, to negate any inference that the agreement had been entered into collusively between the parties. Pursuant to the agreement of October 17, 1935, petitioner, on November 4, 1935, executed assignments of the aforementioned endowment policies to Catharine E. Montgomery. These assignments were considered ambiguous by the Northwestern Mutual Life Insurance Company. Subsequently, on July 10, 1936, new assignments were executed. The assignment respecting the policy for $2,000 assigned and transferred the absolute and unconditional title to Catharine E. Montgomery. That policy is not involved herein. The assignment of the policy for $8,000 reserved to the assignor, his administrators *181 and executors, any dividend or dividends or interest declared or payable on the policy. The assignment also contained, inter alia, the following provisions: "* * * This transfer and assignment is for the benefit of Catharine W. [E.] Montgomery only and no rights or interest hereunder can be exercised by or for the benefit of her heirs, administrators, executors or assigns in the event she predeceases me. * * *
"It is expressly understood and agreed that this transfer is made for the purpose of divesting the assignor of all title to and interest in said Policy and the proceeds thereof and of vesting the absolute and unconditional title thereto in said assignee, except in the event she predeceases me, as hereinabove set forth; then this assignment shall be terminated and the interest of the assignee shall revert to the assignor, his administrators and executors." Under the assignment the assignee was authorized to receive the cash surrender value at any time or to assign the same to the insurance company as security for a loan or loans. On November 4, 1935, petitioner filed a motion in the Court of Common Pleas of Philadelphia County for the appointment of a master to *182 hear testimony in his divorce action. In the hearing before the master petitioner testified to the effect that prior to the agreement of October 17, 1935, there had been no understanding between himself and Catharine E. Montgomery that petitioner would institute the divorce action and that his wife would not contest it. On January 4, 1936, the master filed his report recommending that an absolute divorce be granted. On January 21, 1936, the master's report was formally approved by the Court of Common Pleas of Philadelphia County and the petitioner was granted an absolute divorce from Catharine E. Montgomery on February 7, 1936. The divorce decree contained no reference to the agreement of October 17, 1935, nor to the payment of alimony by petitioner to Catharine E. Montgomery. In each of the taxable years 1946 and 1947 petitioner made weekly payments, aggregating $1,300, to Catharine E. Montgomery pursuant to the agreement of October 17, 1935. These payments constituted periodic payments in discharge of a legal obligation imposed upon or incurred by petitioner under a written instrument incident to a divorce. During each of the taxable years involved petitioner paid the sum *183 of $560.32, less dividends of $72.24 and $70.72, respectively, or the net sums of $488.08 and $489.60, to the Northwestern Mutual Life Insurance Company, being the annual premiums on the $8,000 policy, No. 2,584,632, and claimed such amounts as deductions on his returns filed for those respective years. The deductions were disallowed. The net insurance premiums paid by the petitioner in the taxable years 1946 and 1947, in the respective net amounts of $488.08 and $489.60, were not made for the sole benefit of the petitioner's former wife, Catharine E. Montgomery. Opinion LEMIRE, Judge: The question presented is whether the weekly payments and the insurance premiums paid in the taxable years 1946 and 1947, pursuant to an agreement between petitioner and his former wife, are deductible as periodic payments made under a written instrument incident to divorce, within the meaning of sections 22(k) and 23(u) of the Internal Revenue Code. [1]
*184 The respondent contends that the contested payments were made pursuant to an independent agreement between the petitioner and his former wife, Catharine E. Montgomery, and were not made pursuant to an agreement incident to a divorce within the purview of the applicable sections of the Internal Revenue Code. For some months the petitioner and his former wife had been living apart, and on November 24, 1934, an action for divorce was instituted by the wife. The petitioner appeared in that action. No further proceeding was had therein, although the action was never formally discontinued of record. Prior to July 17, 1935, the petitioner consulted an attorney with the view of instituting an action against his wife for absolute divorce. The attorney advised against such action unless the petitioner made generous and fair financial provisions for the support and maintenance of his wife for the remainder of her life. The petitioner agreed and the attorneys for the respective parties entered upon negotiations for an agreement with that end in view. On July 17, 1935, petitioner's attorney instituted an action in his behalf for an absolute divorce. In that proceeding the petitioner's wife, *185 Catharine, did not file an appearance or any answer. The negotiations conducted between the attorneys for the respective parties eventually culminated in an agreement executed between the petitioner and his then wife, Catharine E. Montgomery, on October 17, 1935. The agreement provided in paragraph 5 that the petitioner would pay to Catharine E. Montgomery the sum of $25 per week during her natural life, with the proviso that if the parties were divorced and Catharine remarried the weekly payments were to immediately terminate upon her remarriage. The petitioner's action for divorce was thereafter duly prosecuted, and on February 7, 1936, he was granted a decree of absolute divorce. After a careful consideration of this record, we are of the opinion that the agreement of October 17, 1935, was entered into in mutual contemplation of divorce, and was incident to a divorce within the purview of section 22(k) of the Internal Revenue Code. Raoul Walsh, 21 T.C. 1063 (Mar. 31, 1954). In that case the pertinent authorities are discussed, and we think it is unnecessary to again review them here. Accordingly, we hold that the weekly payments aggregating $1,300 in each of the *186 taxable years involved which petitioner made to his former wife constituted payments in the nature of, or in lieu of, alimony and are properly deductible by the petitioner under section 23(u) of the Code. We next consider the deductibility of certain insurance premiums paid in each of the taxable years involved by the petitioner pursuant to the settlement agreement of October 17, 1935. The petitioner was required to assign to Catharine E. Montgomery and to pay the insurance premiums on two 15-year endowment life insurance policies on his life. One policy provided for the payment of $2,000. Title to this policy was assigned to the wife absolutely and unconditionally and is not here involved. The other policy in the amount of $8,000 was assigned to petitioner's former wife absolutely, except that in the event she predeceased the petitioner, assignor, the assignment was to terminate and all interest of the assignee was to revert to the petitioner, his administrators and executors. Therefore, in our opinion the interest of Catharine E. Montgomery in that policy was contingent upon her living until the maturity date of the policy on October 29, 1949, unless the insured died sooner. *187 It has been held that the right of a husband to deduct insurance premiums paid on policies provided for in an agreement incident to a divorce under section 23(u) of the Code depends on whether or not the premiums were paid for the sole benefit of the former wife. Smith v. Commissioner, 208 Fed. (2d) 349, affirming on this point a memorandum opinion of this Court filed November 28, 1952. Cf. Lillian Bond Smith, 21 T.C. 353 (Dec. 8, 1953). On the authority of Smith v. Commissioner, supra, we sustain the respondent's disallowance of the insurance premiums paid and claimed as a deduction by the petitioner in the taxable years 1946 and 1947. Decision will be entered under Rule 50. Footnotes
1. SEC. 22. GROSS INCOME. * * *
(k) Alimony, Etc., Income. - In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * * SEC. 23. DEDUCTIONS FROM GROSS INCOME. * * *
(u) Alimony, Etc., Payments. - In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22(k)↩ or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.