HAROLD OSTROV AND RENA OSTROV (NOW RENA SOIFER), PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2700–68. Filed December 1, 1969.

*Gerald I. Arnson* and *Asher Bogin*, for the petitioners.
*Rodney G. Haworth*, for the respondent.

OPINION

WITHEY, *Judge:* Deficiencies have been determined by respondent for the calendar years 1964 and 1965 in the income tax of petitioners in the respective amounts of $2,405.77 and $1,815.18. The only issue presented is whether respondent has erred in including in the gross income of petitioners amounts paid as insurance premiums by the

former husband of Rena Ostrov upon a policy of life insurance wherein the former husband is the insured and she is designated the owner and sole beneficiary of the policy.

This case has been submitted as fully stipulated under Rule 30 of this Court and such stipulation and the exhibits thereto attached and referred to are incorporated herein by this reference.

Rena Ostrov, hereinafter referred to as petitioner, and Harold Ostrov were residents of Dayton, Ohio, when the petition herein was filed with the district director of internal revenue at Cincinnati, Ohio.

On January 30, 1961, Rena was the wife of Nathaniel Soifer and on that date made application for life insurance in the amount of $150,000 on the life of Soifer. Such a policy was issued on February 4, 1961, designating petitioner as the sole owner and beneficiary.

The dividend option elected in the application for insurance was to use the dividends to acquire paid-up additions.

On February 24, 1961, a document entitled "Assignment of Life Insurance Policy as Collateral" was executed by petitioner as owner and Soifer as insured which assigned the life insurance policy, including the paid-up additions, to the First National Bank of Dayton, Ohio (formerly the Peoples Bank & Trust Co.), as loan collateral. The assignment provided that the bank was to have the sole right to collect the proceeds of the policy and the sole right to surrender the policy and to receive the surrender value thereof. If the proceeds or surrender value of the policy exceeded the amount due on the loan, the excess would be paid to the persons entitled thereto under the terms of the policy. The purpose of the agreement was to secure premium loans borrowed by Soifer and paid by him upon the policy for both years at issue.

On November 18, 1962, petitioner and Soifer entered into a separation agreement and property settlement which later was attached to and made a part of a final decree of divorce.

The agreement requires that Soifer provide in his last will and testament a specific bequest for petitioner in such amount as might be necessary, when added to the net proceeds of the insurance policy, to equal the sum of $150,000, prior to the imposition of any succession tax, which is to be borne by petitioner.

The agreement further provided that Soifer was to pay all premiums on the insurance policy when due, but only as long as petitioner lived, in accordance with his existing agreement with the bank, and that he could continue borrowing for that purpose thereunder; that petitioner was to cooperate with the premium payment loan arrangement by executing such documents as might be necessary from time to time to permit Soifer to continue borrowing; and that she was to be irrevo-

cably designated as the sole and absolute owner of the policy and irrevocably designated as primary beneficiary.

Since its issuance, the cash surrender value of the policy has, by virtue of premium loans made under the agreement, been of a lesser amount than the total amount of such loans outstanding. The agreement further provides that the bank may at any time surrender the policy and apply the proceeds upon the loan balance.

Soifer has carried out the terms of both agreements for the years at issue, paying the annual premiums from borrowed money in accordance therewith. Petitioners have not included such premium payments in their gross income. Respondent has included such payments therein and the deficiencies herein have resulted.

Petitioner takes the position that she has received no economic benefit through payment of the premiums and that such payments are therefore not alimony and taxable to her under either section 61 (a) (8) [1] or 71 (a) (1) [2] of the Internal Revenue Code of 1954. Respondent bases his determination upon the proposition that, because petitioner is the owner of the life insurance policy upon which her former husband has paid the premiums, it follows under the rationale of *Lemuel Alexander Carmichael*, 14 T.C. 1356 (1950), and *Anita Quinby Stewart*, 9 T.C. 195 (1947), such payments are in the nature of periodic alimony payments under both sections of the Code set forth in the margin and thus taxable to petitioner.

We are convinced, however, that under the particular circumstances of this case, the premium payments do not constitute support money taxable to petitioner, but do constitute only a means of financing and, at least in part, insuring the ultimate availability of the $150,000 agreed by Soifer to be bequeathed under his will to petitioner. Such a provision in both the separation agreement and the divorce decree is clearly a property settlement arrangement not intended by either party as in the nature of alimony.

It is true that bare legal title to the policy remained in petitioner and that she was the sole beneficiary of the future proceeds thereof,

---

[1] SEC. 61. GROSS INCOME DEFINED.

   (a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

      \*       \*       \*       \*       \*       \*       \*

     (8) Alimony and separate maintenance payments;

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

   (a) GENERAL RULE.—

     (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

provided she outlived Soifer, but due to the premium loan assignment thereof and the terms of the policy regarding its cash surrender values, it is obvious to us that neither party contemplated that petitioner would ever enjoy a benefit by way of increased cash surrender value. Both were aware that the premium loans would always exceed such value. For that reason, the policy could not be used by her as collateral for borrowing. Nor does the fact that petitioner would, upon Soifer's death, receive the proceeds of the policy constitute an economic benefit, for whatever such proceeds amounted to, her ultimate receipts from Soifer's estate would be lessened by a like amount. No claim is made here that the $150,000 bequest is in the nature of alimony and we have found above that any amount so received by her would in fact be in the nature of property settlement.

Under the facts presented, we conclude that the involved insurance policy at no time during the years at issue constituted an economic benefit to petitioner; that she did not at any time receive the premium payments either constructively or actually; that because Soifer was permitted by both the predivorce agreement and the divorce decree to obtain funds wherewith to make the premium payments during the years at issue, in essence, from the value of the policy itself beyond its then cash value, the increases in such value could not inure to petitioner; and that, at most, the policy constituted mere partial security for the testamentary bequest to petitioner, agreed to by Soifer, and ordered by the decree. Having so concluded, we find such premium payments do not constitute taxable income to petitioner under the rationale of *Lilian Bond Smith*, 21 T.C. 353 (1953) ; *Beulah Weil*, 22 T.C. 612 (1954), affd. 240 F. 2d 584 (C.A. 2, 1957) ; *Raoul Walsh*, 21 T.C. 1063 (1954) ; *Carl G. Ortmayer*, 28 T.C. 64 (1957), affirmed in part 265 F. 2d 848 (C.A. 7, 1959) ; and *Meyer Blumenthal*, 13 T.C. 28 (1949), affd. 183 F. 2d 15 (C.A. 3, 1950). *Carmichael* and *Stewart* are not in point here for the reason that in each this Court determined the wife to have derived an economic benefit from premium payments made by a divorced husband, while here, the only benefit resulting from such payments inures to the husband by way of partial reduction of the amount for which his estate would be liable under the $150,000 bequest to petitioner agreed to by him and ordered by the divorce decree in the event she outlives him.

*Decision will be entered for the petitioners.*