Ralph H. Pino and Grace M. Pino, et al. [1] v. Commissioner. Pino v. Commissioner
Docket Nos. 79112, 84237, 84614.
United States Tax Court
T.C. Memo 1962-49; 1962 Tax Ct. Memo LEXIS 258; 21 T.C.M. (CCH) 275; T.C.M. (RIA) 62049; March 13, 1962
Clarence A. Bradford, Esq. *259 , for the petitioners in Docket Nos. 79112 and 84237. J. Henry Canfield, Esq., and Robert M. Schmidt, Esq., for the petitioner in Docket No. 84614. John J. Yurow, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies have been determined by the Commissioner in the income tax of petitioners Ralph and Grace Pino for the taxable years 1954, 1955, 1956, and 1957 in the respective amounts of $1,147.78, $4,401.61, $1,840.75, and $3,663.36. These petitioners claim an overpayment in income tax for 1954, 1955, and 1956 in the respective amounts of $2,385.40, $1,957.01, and $1,766.21. Deficiencies in income tax have also been determined for the same years against petitioner Maude Pino in the respective amounts of $1,198.41, $3,294.20, $1,369.72, and $1,319.68 and additions to tax under sections 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939 for the taxable year 1954 in the respective amounts of $276.83 and $179.58. The issues to be decided are (1) whether amounts paid by Ralph during each year at issue as premiums on a policy of life insurance upon his life made in accordance with the terms of a decree of divorce *260 terminating his marriage to Maude are deductible by him under section 215 of the 1954 Code and includible in the gross income of Maude under section 71(a) of the 1954 Code; (2) whether a payment in 1955 of $5,000 of a total of $10,000 required to be paid by Ralph to Maude under the terms of the decree is deductible by him for that year under section 215 and includible in the gross income of Maude under section 71; and (3) whether Ralph and Grace are entitled to certain claimed deductions for the alleged operation of a farm for each year at issue. Respondent has conceded the claimed 1954 addition to tax under section 294(d)(2) in the income tax of Maude. Whether she is liable for the addition to tax under section 294(d)(1)(A) depends upon the resolution of issues 1 and 2. Adjustments will be made under Rule 50. General Findings of Fact The stipulated facts are found as fact. Ralph and Grace are husband and wife, residing in Plymouth, Michigan, who timely filed their joint income tax returns for 1954 through 1957 with the district director for the district of Michigan. Maude is the former wife of Ralph, residing in Birmingham, Michigan, who timely filed her individual income tax *261 returns for the same years with the same director. Issues 1 and 2. Findings of Fact Maude obtained a final decree of divorce from Ralph on March 3, 1954, issued by the Circuit Court for Wayne County, Michigan. The decree approved and incorporated the terms of a pre-divorce property settlement agreement made between them. In part, the decree provided as follows: IV. PERMANENT ALIMONY Defendant, RALPH H. PINO, is commanded to pay to the Friend of the Court, ex officio Clerk of this Court, as permanent alimony for the use and benefit of the plaintiff, MAUDE W. PINO, the sum of One Thousand ($1,000.00) Dollars on or before March 10, 1954, and a like sum monthly thereafter until the further order of this Court. V. STATUTORY INSURANCE CLAUSE That defendant, RALPH H. PINO, shall irrevocably designate MAUDE W. PINO, for her life, as the beneficiary in the following life insurance policies aggregating ONE HUNDRED THOUSAND ($100,000) DOLLARS on the life of Ralph H. Pino, as follows: Issuing
Policy
Face
Company
Number
Value
Mutual Benefit Life
Insurance Com-
pany of Newark,
New Jersey
1588145
$100,000.00
IT IS FURTHER ORDERED, That Ralph H. Pino *262 shall maintain the aforesaid insurance policies in good standing, without loans thereon and pay the premiums thereon, for a period of not less than five (5) years from the date hereof, unless he shall sooner die. At the expiration of the five (5) year period, Ralph H. Pino may continue, but shall not be required, to pay the premiums thereon. However, in the event he does not pay said premiums then Maude W. Pino shall become the owner irrevocably of said policies and may then make such election to continue to pay the premiums or to cash them in, or to do such things with respect thereto as she may choose to do as owner thereof at that time. VI. MISCELLANEOUS PROPERTY PROVISIONS IT IS FURTHER ORDERED that each of the parties hereto shall forthwith quit claim and transfer to the other, the real and personal property respectively agreed upon in the aforesaid Property Settlement Agreement. IT IS FURTHERED ORDERED, in pursuance of said Property Settlement Agreement and in performance thereof, that Ralph H. Pino shall forthwith pay to Maude W. Pino the sum of FIVE THOUSAND ($5,000.00) DOLLARS in cash and on or before March 1, 1955, the additional sum of FIVE THOUSAND ($5,000.00) *263 DOLLARS in cash, without interest. Maude included the payments to her by Ralph of permanent alimony of $10,000 in 1954 and $12,000 in each of the years 1955, 1956, and 1957 in gross income in her income tax returns for the years 1954, 1955, 1956, and 1957, respectively. Life insurance policy No. 1,588,145, referred to in paragraph V of the divorce decree, was issued on the life of Ralph by The Mutual Benefit Life Insurance Company of Newark, New Jersey, on June 2, 1933, in the face amount of $100,000. On June 15, 1954, Ralph made a written request to The Mutual Benefit Life Insurance Company to change the beneficiary of policy No. 1,588,145 so as to make the policy payable, on maturity by the death of the insured, to "Maude W. Pino, former wife" if living at the death of the insured. Under the terms of the request, the proceeds of the policy were to become payable to the executors or administrators of the insured if Maude predeceased him. The request was accepted for endorsement by the insurance company on June 24, 1954. Ralph retained possession of the life insurance policy throughout the entire period in issue. During the taxable years 1954, 1955, 1956, and 1957, Ralph paid *264 premiums on the policy in the respective amounts of $3,767, $3,659, $3,380, and $3,335. Pursuant to paragraph VI of the divorce decree, Ralph paid to Maude the sum of $5,000 on or about March 3, 1954, and the additional sum of $5,000 on or about March 1, 1955. On the Federal income tax returns filed by them for the taxable years 1954, 1955, and 1956, Ralph and Grace claimed deductions for the amounts paid by Ralph as permanent alimony in the respective amounts of $10,000, $12,000, and $12,000. On their 1955 return, they also claimed a deduction for the $5,000 payment made on or about March 1, 1955, pursuant to paragraph VI of the divorce decree. Ralph and Grace fully paid the tax shown to be due on each of the returns for the taxable years 1954, 1955, and 1956. On January 24, 1958, Ralph and Grace filed claims for refund of income taxes paid for the taxable years 1954, 1955, and 1956, based on claimed additional deductions for premiums paid on the life insurance policy in the respective amounts of $3,767, $3,659, and $3,380. On the Federal income tax return filed by them for the taxable year 1957, Ralph and Grace claimed deductions for permanent alimony in the amount of $12,000 *265 and for the insurance premium payment in the amount of $3,335. Maude did not include in her income either the $5,000 payment received from Ralph in 1955 or the premiums paid by Ralph on the life insurance policy. In the statutory notices of deficiency mailed to petitioners Ralph and Grace on January 9, 1959, covering the taxable years 1954 and 1955, and on October 7, 1959, covering the taxable years 1956 and 1957, the Commissioner determined that neither the $5,000 paid by Ralph in 1955 pursuant to paragraph VI of the divorce decree nor the premiums paid by Ralph on the life insurance policy in the years 1954 through 1957 are deductible under the provisions of section 215 of the 1954 Code. In the statutory notice of deficiency mailed to petitioner Maude on October 7, 1959, the Commissioner determined that all of such amounts represented taxable income to her under the provisions of section 71 of the 1954 Code. Issues 1 and 2. Ultimate Findings During the years in issue, Maude's sole interest in the life insurance policy was that of a contingent beneficiary. She did not obtain any measurable economic benefit as a result of Ralph's payment of the premiums thereon. The premiums *266 which Ralph paid on the policy during the taxable years 1954 through 1957 were not periodic payments of alimony within the meaning of section 71 of the 1954 Code. The payment of $5,000 by Ralph in 1955 was the part payment of a principal amount of $10,000 specified in the decree and is not a periodic payment within the meaning of section 71(a). Issues 1 and 2. Opinion Maude has included in her gross income the amounts received by her from Ralph under the decree provisions requiring him to pay her periodic monthly payments of $1,000. Ralph has deducted them and no issue here relates to them. Maude has not included in her gross income for 1955 the $5,000 paid her by Ralph in that year in part discharge of the $10,000 obligation imposed upon him by the decree, but he, on the other hand, has deducted the amount in his return for that year. He did so because he contends the payment to be a periodic payment within the meaning of section 71(a)(1) [2] and therefore includible in the gross income of Maude and, because of such includibility, deductible by him. We think Ralph must fail in this contention because of section 71(c)(1) which provides that - For purposes of subsection (a), *267 installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. The "principal sum" is specified in paragraph VI of the decree set forth in our findings. It is the sum of the two $5,000 payments there provided for. We note also that both the pre-divorce agreement and the decree under a general heading of "Miscellaneous Property Provisions" specifically differentiates these *268 two payments from the category of support money by providing that they be made "in pursuance of said Property Settlement Agreement and in performance thereof." We find these payments to be in the nature of a property division and not in discharge of an obligation imposed or incurred "because of the marital or family relationship."Cf. Ralph Norton, 16 T.C. 1216, affd. (C.A. 8) 192 F. 2d 960. It follows necessarily that the $5,000 payment made by Ralph in 1955 in pursuance of this paragraph of the decree is not includible in the gross income of Maude and therefore is not deductible by him. J. B. Steinel, 10 T.C. 409. After reviewing the cases cited by petitioners on this point we find them to be distinguishable from the instant case for the reason that each is premised upon a holding that the payments involved were so uncertain in amount or duration of payment that a principal sum could not be said to be specifically ascertainable as required by section 22(k) of the 1939 Code, the antecedent code section of section 71(c)(1) of the 1954 Code. Petitioners, under section 215 of the 1954 Code, contend that Ralph's payment of the premiums upon *269 a specific life insurance policy insuring his life are deductible by him because they also are includible in the gross income of Maude under section 71(a). The premiums were paid by him in pursuance of the terms of paragraph V of the decree and by virtue of like provisions of the pre-divorce agreement. Petitioners' contention is that such payments amount to periodic payments for the support of the divorced wife and constitute amounts includible in her gross income and therefore are deductible by Ralph. Upon the contingency that Ralph should continue to pay such premiums beyond a 5-year period following issuance of the decree, Maude could never become owner of the policy in question. Ralph we think could have been legally prevented during such 5-year period from borrowing upon such policy or doing any other thing which would lessen the amount of proceeds which would be payable thereon at his death, but after that period, should he elect to continue to pay the premiums, he reacquired all his former property rights in the policy saving only the right to change the beneficiary. Maude's only right under this provision of the decree was to be the irrevocable beneficiary of the proceeds of *270 a specific policy of life insurance upon Ralph's life. The policy provisions, subsequent to issuance of the decree, were altered to conform to this part of the decree, but were contingent upon her outliving Ralph, and upon her failure to do so, the proceeds became payable to any beneficiary designated by him. Only upon the contingency that Ralph, subsequent to the 5-year period, did not pay the premiums did Maude acquire any property interest in the policy under the terms of the decree. Because Ralph, during the years at issue, at no time conferred any economic benefit upon Maude nor was required to under the insurance clause either of the decree or pre-divorce agreement, we find the amount of premiums paid by him not to be includible in her gross income under section 71 and not to be deductible by him under section 215. Beulah Weil, 22 T.C. 612, affd. on this issue (C.A. 2) 240 F. 2d 584; Florence H. Griffith, 35 T.C. 882. Issue 3. Findings of Fact From a confused and inadequate record we are able to glean the following facts with respect to the farm loss issue: Ralph has for many years been a doctor of medicine and has conducted *271 a practice as such. He is now retired. Prior to 1954 Ralph had acquired approximately 96 acres of land near Plymouth, Michigan. The land was mostly hills and swamp with two small streams within its boundaries. He had, prior to 1954, decided to operate the acreage as a farm where sheep would be raised, orchards of peaches and apples maintained and the fruit harvested, and vegetables raised and marketed. The sheep were to be raised primarily for the production of wool which was to be used in a "weaving" project. He also intended to operate a farm produce stand on a highway bordering the property and actually did construct such a stand prior to 1954. The weaving project was to provide merchandise to be sold from the road-stand, but both the stand and the project were abandoned before any such business was conducted. In order to carry out his decision, he employed experienced farmers to get the land into shape for these purposes. To that end, the two streams were dammed creating a pond of several acres extent to be used for irrigation purposes. Roads were either constructed or existing roads improved and some drainage ditching was carried out. An undisclosed number of sheep were acquired *272 and kept on the premises throughout the years at issue. Ralph maintained separate records and books of account with respect to his medical practice and his "farm." The contents of neither are disclosed by this record. The last farmer employed by Ralph died in July of 1955 and since that time no work of any kind has been conducted on the premises except as follows. Prior to 1954 three dwellings were constructed on the property and were used to house the employed farmers. During the years at issue they were rented to tenants other than farmers. Two of the houses were located about 600 feet from the highway with roads leading to them. The other house was situated nearer the highway. Ralph owned certain farm machinery which was used during the years at issue primarily to mow weeds, keep ditches open, and generally to make the premises suitable and attractive for residence purposes. Ralph visited the "farm" about one-half day each week during which he performed some work as above described in and about the premises. No land other than a kitchen garden was under cultivation during the period 1954 through 1957. No farm produce was raised upon the premises other than the natural, untended, *273 and uncultivated fruit from the orchard and the wool grown by the sheep. An undisclosed amount of advertising was done by Ralph in 1954 for the purpose of acquiring the services of a farmer. Ralph reported his rental income and such expenses as pertained thereto in a farm schedule attached to his return for each year at issue as follows: 1954
1955
1956
1957
Sale of produce raised
$ 539.89
$ 851.88
$ 221.73
$ 76.69
Other farm income: Rental of buildings
1,025.00
3,345.00
4,320.00
4,420.00
Refunds - miscellaneous
1.50
2.42
Total
$1,564.89
$4,198.38
$4,541.73
$4,499.11
Profit or (loss) on sale of items purchased: Small mower
(143.04)
Ford tractor
103.61
Fruit sprayer
(185.00)
Gross profits
$1,340.46
$4,198.38
$4,541.73
$4,499.11
Farm expenses: Labor hired
1,503.14
189.00
698.30
Feed purchased
2.25
38.26
19.94
Seed and plants purchased
181.62
190.25
Supplies purchased
73.33
85.35
31.81
27.49
Cost of repairs and maintenance
496.14
1,031.25
1,168.99
2,143.21
Fertilizers and lime
15.00
Veterinary and medicine for livestock
25.00
8.75
Gasoline, other fuel and oil for farm
business
181.13
195.10
85.38
90.43
Taxes
616.47
699.03
683.16
811.91
Insurance
874.96
464.72
414.60
Interest
25.44
Water, rent, electricity and telephone
195.63
293.89
44.91
63.39
Advertising and subscriptions
11.91
86.49
28.64
87.87
Bank service charges
8.11
Chickens
31.25
Fees, licenses, memberships and mis-
cellaneous
28.90
14.60
25.00
167.24
Fuel
47.41
Legal expense
1,413.31
Locker rental
21.15
Soil analysis
6.50
Tools
32.84
Total
$1,945.82
$4,982.17
$2,784.87
$5,967.59
Depreciation of assets used on farm
1,536.54
1,423.49
1,422.05
1,489.99
Depreciation of rental property
1,302.60
1,302.60
1,302.60
1,320.80
Total deductions
$4,784.96
$7,708.26
$5,509.52
$8,778.38
Net farm profit or (loss)
($3,444.50)
($3,509.88)
($ 967.79)
($4,279.27)
*274 In determining his deficiency the respondent adjusted such income and expense as follows: 1954
1955
1956
1957
Farm Expenses
$1,945.82
$4,982.17
$2,784.87
$5,967.59
Less: Taxes, Interest and Rental Advertising
641.91
699.03
683.16
899.78
$1,303.91
$4,283.14
$2,101.71
$5,067.81
Depreciation on Farm Equipment
1,536.54
1,423.49
1,422.05
1,489.99
Loss on Sale of Farm Equipment
328.04
0
0
0
$3,168.49
$5,706.63
$3,523.76
$6,557.80
Less: Farm Income (Sales of Produce & Misc.)
539.89
853.38
221.73
79.11
Farm Loss Disallowed
$2,628.60
$4,853.25
$3,302.03
$6,478.69
Ralph and Grace were not engaged in the business of farming during the period 1954 through 1957. Except for the renting of the three dwellings above referred to, the items listed above as disallowed by respondent were not paid or incurred by Ralph and Grace in the operation of a farm business but were personal expenses. Issue 3. Opinion The burden of showing by convincing proof that Ralph and Grace were engaged in the business of farming during the years at issue and that the expenses on their farm schedule were incident to such business rests upon them. *275 This burden they have failed to support herein. Except for work shown to have been performed during 1954 and until July of 1955 in digging drainage ditches, no farming operation is even remotely disclosed by this record. Even such work might have been done for the purpose of making the premises suitable and attractive for dwelling purposes for all that is shown here. The only probative evidence regarding the issue is the testimony of the property manager and accountant who "managed" the "farm" and kept the accounts pertaining thereto and prepared petitioners' income tax returns, respectively. This testimony is uncontroverted to the effect that no farming operations were carried on at the "farm" and that no income was derived therefrom during the years at issue. No explanation is made with respect to any of the expenses listed on the farm schedule attached to petitioners' returns with the possible exception of the use of certain farm machinery in draining the land and mowing weeds. Indeed no verification is made that such expenses were even actually paid or incurred. We note that although books and records were maintained with respect to the "farm operation, none were offered or received *276 in evidence and in fact were not present at the hearing hereof. We find that the "farm" operation was not a transaction entered into for profit within the meaning of section 165(c) of the 1954 Code. Respondent has allowed as deductions certain of such expenses which he has determined are incidental to the renting of the three dwellings on the premises, such as taxes, interest, and rental advertising, has disallowed the remainder, and in effect reduced petitioners' reported income by the amount reported as having been received from the sale of farm produce. For lack of sufficient proof to sustain the petitioners' burden of proof, we must presume respondent's determination of a deficiency on this issue to be correct and justified. Because of our disposition of issues 1 and 2 it follows that petitioner Maude Pino is not liable for an addition to tax under section 294(d)(1)(A). Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: RALPH H. PINO and GRACE M. PINO, Docket No. 84237, and MAUDE W. PINO, Docket No. 84614.↩
2. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩